# United States Court of Appeals
## For the First Circuit

No. 15-1214

CLAYTON SCHWANN, individually and on behalf of a class of all others similarly situated; THOMAS LEDUC, individually and on behalf of a class of all others similarly situated; RAMON HELEODORO, individually and on behalf of a class of all others similarly situated; JAMES E. DUGGAN, individually and on behalf of a class of all others similarly situated; ERIC VITALE, individually and on behalf of a class of all others similarly situated; MUCHIRAHONDO PHINNIAS, individually and on behalf of a class of all others similarly situated; TEMISTOCLES SANTOS, individually and on behalf of a class of all others similarly situated; ROBERT SANGSTER, individually and on behalf of a class of all others similarly situated; JEFF BAYLIES; LAWRENCE ADAMS,

Plaintiffs, Appellants,

MARVIN SANTIAGO, individually and on behalf of a class of all others similarly situated; MANUEL MONTROND, individually and on behalf of a class of all others similarly; SERRULO FERNANDEZ DEJESUS, individually and on behalf of a class of all others similarly situated; WAN PYO CONG, individually and on behalf of a class of all others similarly situated; LEON HECTOR,

Plaintiffs,

v.

FEDEX GROUND PACKAGE SYSTEM, INC., d/b/a FEDEX HOME DELIVERY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Lynch, Stahl, and Kayatta,
<u>Circuit Judges</u>.

---

Harold L. Lichten, with whom Shannon Liss-Riordan and Lichten & Liss-Riordan, P.C. were on brief, for appellants.

Peter Sacks, State Solicitor, with whom Maura Healey, Attorney General of Massachusetts, and Elizabeth N. Dewar, Assistant State Solicitor, were on brief, for the Massachusetts Attorney General, amicus curiae.

William M. Jay, with whom James C. Rehnquist, Kate E. MacLeman, and Goodwin Procter LLP, were on brief, for appellee.

---

February 22, 2016

---

**KAYATTA**, **Circuit Judge**.  Plaintiffs here are individuals who contracted with Defendant FedEx Ground Package System, Inc. ("FedEx") to provide so-called first-and-last mile pick-up and delivery services.  They claim that FedEx should have treated and paid them as employees in certain respects, rather than as independent contractors, because FedEx cannot satisfy all three necessary requirements under the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149, § 148B(a) (the "Massachusetts Statute").  We find that the express preemption provision of the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), preempts the application of one of those requirements to FedEx.  We also find that the preempted requirement is severable from the two remaining requirements of the Massachusetts Statute, and we remand for further consideration of whether Plaintiffs may prevail on their claims under Massachusetts law by relying on either of those requirements.

**I.**

A.  **Relevant Facts**

FedEx is a federally registered motor carrier that is licensed to provide nationwide package pick-up, transportation, and delivery services.  As relevant to the claims in this case, FedEx did not itself customarily perform what is called "first-and-last mile" pick-up and delivery services to customers.

Instead, it contracted with individuals such as Plaintiffs whom it treated as independent contractors to perform these services. FedEx's relationship with these individuals was governed by an Operating Agreement ("OA").

Under the OA, each individual contractor acquired an exclusive and transferable interest in customer accounts located in a designated geographical area in return for assuming the responsibility of providing daily pick-up and delivery services for FedEx in that area. The OA contemplated that such services may be performed by persons other than the individual contractor, and established a financial structure by which the contractors were compensated. The OA also provided that FedEx shall not have authority "to prescribe hours of work, whether or when the Contractor is to take breaks, what route the Contractor is to follow, or other details of performance." The contractor bore all costs and expenses incurred in providing the pick-up and delivery services, including but not limited to those associated with obtaining and using a suitable vehicle, fuel, compliant communications equipment, uniforms, and insurance. At least some of these costs and expenses were defrayed through forms of supplemental compensation paid to the contractor under the OA's financial structure.

**B.    State Law**

Plaintiffs contend that FedEx misclassified them as independent contractors and seek damages for loss of wages, improper wage deductions, and loss of benefits under the Massachusetts Statute and the Massachusetts Wage Act (the "Wage Act"), Mass. Gen. Laws ch. 149, §§ 148, 150, as well as attorneys' fees.[1]

The relevant text of the Massachusetts Statute provides that "an individual performing any service . . . shall be considered to be an employee" unless:

> (1)  the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>
> (2)  the service is performed outside the usual course of the business of the employer; and,
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Id. § 148B(a).  For ease of reference, we follow the parties in referring to the three numbered subsections (1)-(3) as "Prongs 1, 2, and 3."

---

[1] Plaintiffs' complaint also alleged an unjust enrichment claim, the dismissal of which Plaintiffs do not challenge.

If Prong 2 is not preempted, and a court deems, as the district court did in this case, that the service Plaintiffs rendered was not "outside the usual course of business of [FedEx]," then Plaintiffs "shall be considered to be an employee" "[f]or the purpose of [Chapter 149] and [C]hapter 151." Id. Under those chapters, an employer must provide certain benefits to its employees, including various days off, see id. § 47, parental leave, id. § 105D, work-break benefits, id. § 100, and a minimum wage, Mass. Gen. Laws ch. 151, § 1. The employer must also track and record hours worked and amounts paid. Id. § 15; Mass. Gen. Laws ch. 149, § 52. According to the Massachusetts Attorney General, under Plaintiffs' proposed application of the Massachusetts Statute, Chapter 149 would require FedEx to pay for or reimburse all out-of-pocket expenses incurred for the benefit of FedEx such as the maintenance and depreciation of the vehicles they used to perform their services. The statute also bars the employer from excepting itself from this mandate by contract. Camara v. Attorney General, 941 N.E.2d 1118, 1121 (Mass. 2011); Mass. Gen. Laws ch. 149, § 148.[2]

_____

[2] In their original briefing and in the supplemental briefing we invited, the parties spar over which other state law requirements are triggered by a finding of employee status under the Massachusetts Statute and what effect those requirements would have on FedEx's prices, routes, and services. In deciding the issues raised on this appeal, we have no occasion to resolve this dispute concerning the full range of state law requirements

- 6 -

## C.   Procedural History

After discovery and a few procedural skirmishes, Plaintiffs pursued a motion for partial summary judgment arguing that they were misclassified as independent contractors because FedEx failed to satisfy Prongs 2 and 3 of the Massachusetts Statute.  FedEx opposed the motion by arguing that there existed genuine issues of material fact relevant to whether Plaintiffs were employees of FedEx under Prongs 2 and 3.  FedEx also filed its own summary judgment motion requesting dismissal of all counts. In its memorandum in support of that motion, FedEx argued that all of Plaintiffs' claims were preempted by the FAAAA.

In reply to Plaintiffs' opposition to its summary judgment motion, FedEx scaled back the scope of its preemption argument, eschewing any argument that Prongs 1 and 3 of the Massachusetts Statute were preempted.  FedEx, rather, clarified in its reply brief that its motion instead "is based on the specific, and unique, effects of § 148B's 'usual course of business' factor," while reminding the court that it had "expressly stated in its initial brief that it does not oppose severance of the 'usual course of business' factor from § 148B if that factor is deemed to be preempted."  Therefore, argued FedEx, "if the 'usual course of business' factor is found preempted (and the Court finds it to be

---

triggered by a finding that a person is an employee under § 148B(a).

severable), then summary judgment on that factor should be granted and the case would proceed to trial" on the issues of whether Plaintiffs were employees of FedEx under Prongs 1 and 3.

The district court initially granted Plaintiffs' motion for partial summary judgment under Prong 2. Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094, 2013 WL 3353776, at *7 (D. Mass. July 3, 2013). It found that FedEx could not satisfy Prong 2 because the pick-up and delivery services performed by Plaintiffs were not outside FedEx's "usual course of business."[3] Id. at *6. The district court also held that the Massachusetts Statute was not preempted by the express preemption provision of the FAAAA because the state law (1) did not sufficiently relate to FedEx's prices, routes, or services, and (2) did not concern a motor carrier's transportation of property. Id. at *4.[4]

The district court then certified several state law questions concerning damages under the Wage Act to the Supreme Judicial Court of Massachusetts ("SJC") and stayed the case pending a response. During the time the case was stayed, we decided Massachusetts Delivery Ass'n v. Coakley, 769 F.3d 11 (1st Cir.

---

[3] In light of this finding, the district court explained that it did not need to reach Plaintiffs' arguments under Prong 3. Schwann, 2013 WL 3353776, at *6.

[4] The district court also entered judgment for FedEx on the unjust enrichment claim, finding that damages under that theory of liability would duplicate an award under the Wage Act. Id. Plaintiffs do not challenge that ruling on this appeal.

2014) ("MDA").  In MDA, we reversed and remanded a district court decision that had found Prong 2 not preempted by the FAAAA.  Id. at 14.  We ruled that the district court in that case had applied an unduly narrow interpretation of the FAAAA's express preemption provision.  Id.

The district court in this case then called for supplemental briefing to address both the import of MDA and Plaintiffs' summary judgment arguments under Prong 3 of the Massachusetts Statute.  In their opening supplemental brief, Plaintiffs argued that our decision in MDA did not affect the district court's finding that the Massachusetts Statute was not preempted by the FAAAA.  Plaintiffs also argued that, even were Prong 2 preempted, the court should find on summary judgment that they were employees of FedEx based on Prong 3.[5]  In its opening supplemental brief, FedEx argued that MDA required the court to vacate its previous ruling of non-preemption and to find that Prong 2 was preempted.[6]  FedEx also disputed Plaintiffs' interpretation of Prong 3 and reiterated that there existed genuine

---

[5] Exceeding the permission granted by the district court's supplemental briefing request, Plaintiffs also advanced for the first time the argument that the district court could find on summary judgment that they were employees of FedEx based on Prong 1 of the statute.

[6] While FedEx in this supplemental brief generally referred to "§ 148B" rather than "§ 148B(a)(2)" or "Prong 2," its arguments echoed those that it made on summary judgment, in which it specified (in its reply brief) that its preemption argument only pertained to Prong 2 of the statute.

issues of material fact relevant to whether Plaintiffs were employees of FedEx under that prong. Then, in its reply to Plaintiffs' supplemental brief, FedEx argued for the first time that Prong 2, if preempted, was not severable from the remainder of the Massachusetts Statute.

Thereafter the district court issued a second decision on the parties' summary judgment motions in which it (1) withdrew its prior opinion insofar as it granted summary judgment to Plaintiffs on Count I and (2) granted FedEx summary judgment on all counts. Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094, 2015 WL 501512, at *2 (D. Mass. Feb. 5, 2015). Tracking MDA, the district court emphasized that "a statute's 'potential' impact on carriers' prices, routes, and services can be sufficient [to trigger preemption] if it is significant, rather than tenuous, remote, or peripheral," and that this impact need not by proven by empirical evidence, but may be proven by "the logical effect that a particular scheme has on the delivery of services." Id. at *1 (quoting MDA, 769 F.3d at 21). After considering "such logical (if indirect) effects," id., the district court found that the Massachusetts Statute "unquestionably ha[s] an impact on 'price, route[s], [and] services' by in effect proscribing the carrier's preferred business model," id. (second and third alterations in

- 10 -

original) (quoting 49 U.S.C. § 14501(c)(1)).[7]  The district court thus found that Prong 2 was preempted by the FAAAA.  Id. at *2.

The district court next turned to Plaintiffs' summary judgment arguments under Prong 3.  Id.  It held that Prong 2 was not severable from the Massachusetts Statute as a whole because the court "has no way of knowing whether the Legislature . . . would have chosen to rewrite the statute less restrictively to consist of only the first and third prongs," and thus "the entire statute must be treated as preempted."  Id.  The district court then added, sua sponte, a conclusion that FedEx itself was not advocating: that application of Prongs 1 and 3 against motor carriers would also be preempted by the FAAAA because "motor carriers would be impacted by forbidding the preferred business model."  Id.

Plaintiffs appealed.  We now review the district court's preemption and severability holdings de novo.  See MDA, 769 F.3d at 17.

## II.

The FAAAA's express preemption provision provides that all state laws that "relate[] to a price, route, or service of any motor carrier . . . with respect to the transportation of property"

---

[7] The district court also recognized that in MDA, "a case virtually identical to this one in its relevant respects," we held that the Massachusetts Statute concerns a motor carrier's transportation of property.  Schwann, 2015 WL 501512, at *1-2. Plaintiffs do not contest this aspect of the district court's ruling.

are preempted.  49 U.S.C. § 14501(c)(1).  Congress, in writing the portion of this clause that is pertinent to this appeal, copied the language of the preemption clause of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1).  Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008).  It did so in order to adopt "the broad preemption interpretation [of the ADA] adopted by the United States Supreme Court in [Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992)]."  Id. (citing H.R. Conf. Rep. 103-677, at 83).  As we observed in MDA, the resulting scope of FAAAA preemption is therefore both informed by interpretations of ADA preemption and, like ADA preemption, is "purposely expansive."  MDA, 769 F.3d at 18.

The Supreme Court has identified the dual objectives that account for this broad reach:  to "ensure that the States would not undo federal deregulation with regulation of their own," Rowe, 552 U.S. at 368 (quoting Morales, 504 U.S. at 378); and to avoid "a patchwork of state service-determining laws, rules, and regulations," id. at 373.  In this manner, Congress sought to "help[] ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'"  Id. at 371 (quoting Morales, 504 U.S. at 378).

Section 14501(c)(1) preemption may therefore occur "even if a state law's effect on rates, routes, or services 'is only indirect,'" id. at 370 (quoting Morales, 504 U.S. at 386), and applies "at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives," id. at 371 (quoting Morales, 504 U.S. at 390). We summarized these principles in MDA by explaining that "a state statute is preempted if it expressly references, or has a significant impact on, carriers' prices, routes, or services." MDA, 769 F.3d at 17-18.

Congress itself acknowledged the breadth of this language by perceiving a need to include paragraph (c)(2) of the statute to "restrict" from its otherwise broad preemptive scope certain specified areas traditionally governed by the states, such as "the safety regulatory authority of a State with respect to motor vehicles" and "the authority of a State to impose highway route controls or limitations." 49 U.S.C. § 14501(c)(2). The Supreme Court has explained that "[t]he exceptions to § 14501(c)(1)'s general rule of preemption identify matters a State may regulate when it would otherwise be precluded from doing so." Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769, 1780 (2013).

There is, of course, "a necessary limit to the scope of FAAAA preemption." MDA, 769 F.3d at 18. After all, in a broad sense, everything "relates to" everything else in some manner.

- 13 -

See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ."). Case law therefore excludes from the otherwise broad reach of § 14501(c)(1) those state laws that have only a "tenuous, remote, or peripheral" impact on prices, routes, or services. See Rowe, 552 U.S. at 371 (quoting Morales, 504 U.S. at 390). As examples of such unpreempted laws, the Supreme Court has pointed to laws against gambling and prostitution, Morales, 504 U.S. at 390, and "state regulation that broadly prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public (e.g., a prohibition on smoking in certain public places)," Rowe 552 U.S. at 375. These examples demonstrate both that there is a limit to the preemptive scope of § 14501(c)(1) and that one must move quite far afield to confidently reach that limit. See DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 86-87 (1st Cir. 2011). Exactly where the boundary lies between permissible and impermissible state regulation is not entirely clear.

In MDA, the district court failed to apply this broad interpretation of § 14501(c)(1) in finding that, based on facts similar to those in this case, Prong 2's effects did not sufficiently impact a motor carrier's prices, routes, or services.

- 14 -

MDA, 769 F.3d at 14. In our decision vacating the district court's order, we noted that "a statute's 'potential' impact on carriers' prices, routes, and services" need not be proven by empirical evidence; rather, courts may "look[ ] to the logical effect that a particular scheme has on the delivery of services." Id. at 21 (alteration in original) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 82 n.14 (1st Cir. 2006), aff'd, Rowe, 552 U.S. 364). This logical effect, we said, "can be sufficient even if indirect" so that motor carriers can be immunized "from state regulations that threaten to unravel Congress's purposeful deregulation in this area." Id. Because the district court in MDA ultimately based its holding on an erroneous finding that § 14501(c)(1)'s "with respect to the transportation of property" requirement had not been satisfied, we remanded that case to the district court so that it could decide, consistent with our opinion, whether the "related to" standard was met. Id. at 17–22.

We now pick up where MDA left off, as we have a district court's considered application of § 14501(c)(1)'s "related to" standard to Prong 2 of the Massachusetts Statute. We begin by defining precisely the question before us. Whether Prong 2 is facially preempted in the abstract is not the question. Unlike the provisions of the Maine state statute in Rowe specifically targeting the services provided by tobacco carriers, 552 U.S. at 368, 373, the Massachusetts Statute is a generally applicable law

- 15 -

regulating the relationships between businesses and persons who perform services for those businesses, Mass. Gen. Laws ch. 149, § 148B(a). Thus, our preemption analysis in this case trains instead upon the manner in which Prong 2 of the Massachusetts Statute would apply to FedEx's operations. In this respect, our inquiry is analogous to that undertaken by the Supreme Court in Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422 (2014), where the question before it was not whether the state common law implied covenant theory was facially preempted, but whether ADA preemption precluded the plaintiffs from employing that theory to add to the terms of a contract governing an airline's frequent flyer program, id. at 1427.

Plaintiffs' successful reliance on Prong 2 in this case would necessarily require that we first look at the "service" performed by Plaintiffs on behalf of FedEx, that we next determine that that service is not "outside the usual course of the business of [FedEx]," and that we then, in substance, bar FedEx from using any individuals as full-fledged independent contractors to perform that service. See Mass. Gen. Laws ch. 149, § 148B(a)(2). For the following reasons, we find that Prong 2, if applied in this way, would "relate[] to" the "service of a motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

For starters, we observe the directly referential relationship between Plaintiffs' application of Prong 2 and FedEx's motor carrier services.  By honing in on a "service" and then directing the court to determine whether that service fits within the "usual course of business of [FedEx]," see Mass. Gen. Laws § 148B(a)(2), Prong 2 requires a judicial determination of the extent and types of motor carrier services that FedEx provides. The text of Prong 2 as applied in this way thus "expressly references," MDA, 769 F.3d at 17, FedEx's motor carrier services.

Prong 2 also stands as something of an anomaly because it makes any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes.  By contrast, under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-19, and the law of many states, the relationship between the service performed and the usual course of the enterprise's business is simply one among many factors to be considered, see, e.g., Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 675 n.5 (1st Cir. 1998); Empire Star Mines Co. v. Cal. Emp't Comm'n, 168 P.2d 686, 692 (Cal. 1946), overruled on other grounds by People v. Sims, 651 P.2d 321, 328 n.8 (Cal. 1982). Plaintiffs point to, at most, only a small number of states that have, for wage law purposes, enacted a standard similar to Prong 2. Prong 2, as Plaintiffs would apply it, thus requires FedEx to use persons who are employees to perform first-and-last mile pick-up

and delivery services even if those persons could be deemed independent contractors under federal law and the law of many states.

This relatively novel aspect of Prong 2 runs counter to Congress's purpose to avoid "a patchwork of state service-determining laws, rules, and regulations" that it determined were better left to the competitive marketplace. Rowe, 552 U.S. at 373. Additionally, that same novelty cuts against any argument that Prong 2 is simply a type of pre-existing and customary manifestation of the state's police power that we might assume Congress intended to leave untouched.

The regulatory interference posed by Plaintiffs' application of Prong 2 is not peripheral. The decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business. As this case shows, that decision implicates the way in which a company chooses to allocate its resources and incentivize those persons providing the service. Imagine, for example, state legislation that barred any company from vertically integrating (that is, performing all connected services itself through its own employees). Legislation of that type would directly and substantially restrain the free-market pursuit of perceived efficiencies and competitive advantage that some competitors might otherwise choose to pursue in designing the

- 18 -

manner in which they perform their services to meet market demands. Prong 2, as Plaintiffs propose to apply it, is simply the flip side of this same type of market interference: It requires a court to define the degree of integration that a company may employ by mandating that any services deemed "usual" to its course of business be performed by an employee. Such an application of state law poses a serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them.

This case serves as a good example. A company that transports property might opt to transport the property itself from pick-up to delivery. Or it might opt to run only a portion of the route itself, contracting with others to transport the property for some portion of the route. In other words, a company might provide transportation, or it might provide for transportation by others. FedEx opted to do both. It had its own employees transport the packages most of the way, but left local pick-up and delivery to individuals who (1) purchased the right to service certain FedEx customer accounts in an area, (2) bore the expense for servicing such accounts, (3) received compensation based on a formula that accounted for the number of packages delivered, and (4) reserved for themselves the right to decide what route to follow in making deliveries. Through such an

arrangement, FedEx provided these individuals with an economic incentive to keep costs low, to deliver packages efficiently, and to provide excellent customer service. [See R. 556, ¶ 12.]

This method of providing for delivery services would be largely foreclosed by Plaintiffs' application of Prong 2 if a court determined that first-and-last mile transportation was "the usual course of the business of [FedEx]." As the Attorney General acknowledged in a bit of an understatement, "§ 148B's Prong 2 makes it quite difficult for carriers like FedEx to treat individual drivers as independent contractors, rather than employees [for state wage law purposes]." And the parties as well as the Attorney General admit that because Prong 2 would mandate that FedEx classify these individual contractors as employees, FedEx would be required to reimburse them for business-related expenses. The logical effect of this requirement would thus preclude FedEx from providing for first-and-last mile pick-up and delivery services through an independent person who bears the economic risk associated with any inefficiencies in performance.

This regulatory prohibition would also logically be expected to have a significant impact on the actual routes followed for the pick-up and delivery of packages. FedEx through its employees did not fix or determine the precise route for the first-and-last mile of pick-up and delivery. Rather, FedEx delegated the precise design of the route to the contractor, who assumed the

risks and benefits of increased or decreased efficiencies achieved by the selected routes. It is reasonable to conclude that employees would have a different array of incentives that could render their selection of routes less efficient, undercutting one of Congress's express goals in crafting an express preemption proviso. See Rowe, 552 U.S. at 371 (describing "Congress' overarching goal as helping ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality'" (quoting Morales, 504 U.S. at 378)).

Perhaps recognizing that this result is incompatible with § 14501(c)(1), Plaintiffs argue that such an effect does not necessarily follow from the application of Prong 2. Instead, Plaintiffs argue that FedEx may continue to use an incentive-based arrangement by paying employee drivers, for instance, on a "per-package" or "per-stop" basis or providing them with performance-based bonuses. [Id.] Of course, such incentive structures would lack the fuller selective force of the structure chosen by FedEx, which guarantees no net income for the services rendered. More importantly, we find the interference inherent in dictating such an approach to exceed the interference found excessive in DiFiore, where the necessity of a solution in that case highlighted how the state tips law "require[d] changes in the way the service is

provided." DiFiore, 646 F.3d at 88. Here, too, Plaintiffs' suggestion that FedEx change the manner in which it incentivizes efficient delivery simply highlights the tangible manner in which Plaintiffs' proposed application of Prong 2 would significantly affect how FedEx provides good and efficient service. This interference, in combination with the points we have already discussed, demonstrates that application of Prong 2 in this case would transgress Congress's "view that the best interests of [motor carrier service beneficiaries] are most effectively promoted, in the main, by allowing the free market to operate." Northwest, 134 S. Ct. at 1433.[8]

We do not hold that FedEx has free rein to classify workers by fiat as independent contractors. In line with our explanation in DiFiore, motor carriers are not exempt "from state taxes, state lawsuits of many kinds, and perhaps most other state

---

[8] In reaching our conclusion, we considered the recent Seventh Circuit decision in Costello v. BeavEx, Inc., Nos. 15-1109, 15-1110, 2016 WL 212797 (7th Cir. Jan. 19, 2016). There, the Court distinguished the Massachusetts statute at issue in MDA from the Illinois statute before it in holding that the latter was not preempted by the FAAAA. Id. at *8-10. Important to the Court's decision were the carrier's ability under Illinois law to contract around the state rule prohibiting deductions from wages, the lesser scope of laws implicated by application of the challenged state independent contractor statute, and the carrier's failure to show that application of the law would require a change in the services that the carrier itself provides. Id. We note, too, that presumably for these reasons the Seventh Circuit did not consider the significance of the statute's requirement that the court define the carrier's scope of business, or the potential effects on routes of any binding change on incentive structures.

regulation of any consequence."  646 F.3d at 89.  Such state laws that are more or less nationally uniform, and therefore pose no patchwork problem, or that have less of a reference to and effect on a carrier's service and routes pose closer questions than that presented in this case.  Completing the analysis we began in MDA, we hold only that Prong 2 as Plaintiffs propose to apply it sufficiently "relate[s] to" FedEx's service and routes and is thus preempted by § 14501(c)(1).

## III.

Our finding that Prong 2 is preempted as applied to FedEx in this case requires us to decide next whether the district court correctly held that this preempted prong is not severable from Prongs 1 and 3 of the Massachusetts Statute.  The answer to this question is controlled by state law.  See Ackerley Commc'ns of Mass., Inc. v. City of Cambridge, 135 F.3d 210, 215 (1st Cir. 1998).

In Massachusetts, "[t]he ultimate question on severability . . . is the intent of the Legislature." Peterson v. Comm'r of Revenue, 825 N.E.2d 1029, 1038 (Mass. 2005).  "We must [therefore] seek to ascertain whether the Legislature would have enacted the particular bill without the [invalid] provision, or whether, in the absence of the [invalid] provision, the Legislature would have preferred that the bill have no effect at all."  Id. (internal quotation marks and citations omitted).  Guiding this

inquiry is a well-established judicial preference in favor of severability and a recognition that "the Legislature has announced its own preference in favor of severability" as well. Id.; see also Mass. Gen. Laws ch. 4, § 6 ("The provisions of any statute shall be deemed severable, and if any part of any statute shall be adjudged unconstitutional or invalid, such judgment shall not affect other valid parts thereof.").

In divining legislative intent, Massachusetts courts consider whether the structure of the statute allows the valid provisions to stand independent of the invalid, or whether the provisions are so entwined that "the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." Murphy v. Comm'r of the Dep't of Indus. Accidents, 635 N.E.2d 1180, 1183 (Mass. 1994) (quoting Mass. Wholesalers of Malt Beverages, Inc. v. Commonwealth, 609 N.E.2d 67, 72 (Mass. 1993)).[9]

Accordingly, we first look to the structure of § 148B(a) to determine whether Prong 2 is capable of separation from the remainder of the statute, or instead is so "entwined" that "the

---

[9] Massachusetts courts also consider a statute's legislative history. See Peterson, 825 N.E.2d at 1037–39. FedEx asks that we interpret the legislative history of the Massachusetts Statute, including a 2004 amendment which eliminated an alternative method to satisfy Prong 2, to find that Prong 2 is the "centerpiece" of the statute and is, therefore, not severable. Given the clear evidence of legislative purpose, we decline to engage in such retrospective political analysis.

Legislature could not have intended that" Prongs 1 and 3 survive without Prong 2. See id. (quoting Mass. Wholesalers of Malt Beverages, Inc., 609 N.E.2d at 72). This is not a difficult question. The separated itemization of § 148B(a)'s three factors easily allows for the straightforward deletion of one factor without touching the others. Nor do we need to somehow dissect Prong 2 itself in order to save Prongs 1 and 3. In short, Prong 2 may easily be eliminated from the statute, leaving the remainder intact. FedEx does not argue to the contrary.

We examine next the "intent of the Legislature," Peterson, 825 N.E.2d at 1038, in enacting § 148B(a). The salient aim of the statute was "to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors." Somers v. Converged Access, Inc., 911 N.E.2d 739, 749 (Mass. 2009). So, the question is: does leaving § 148B(a) in place without Prong 2 as applied to Plaintiffs leave Plaintiffs with less protection from misclassification than would Massachusetts law without § 148B(a) altogether? FedEx makes no claim that such a reduction would occur if Prongs 1 and 3 are left standing. Nor do Plaintiffs or the Massachusetts Attorney General make such a claim even though they would have great incentive to argue for non-severability were a pruned statute worse than no statute. On such a record, it would seem that § 148B(a) without Prong 2 still provides as much (or

more) protection against misclassification than does Massachusetts law without § 148B(a) altogether.  We therefore think that the legislature's plain aim in enacting this statute favors two-thirds of this loaf over no loaf at all as applied to motor carriers with respect to the transportation of property.

## IV.

We next turn to the district court's single-sentence disposition of Prongs 1 and 3 of the Massachusetts Statute as preempted.  Schwann, 2015 WL 501512, at *2.  This holding puzzles us because, as explained above, FedEx expressly disavowed making such an argument on summary judgment.  Even on appeal, in the face of Plaintiffs' argument that Prongs 1 and 3 are not preempted, FedEx does not argue otherwise, instead stating that "[it] did not seek to invalidate [Prongs 1 and 3] except to the extent they are non-severable."  This litigation has already lasted over four-and-one-half years.  It should be narrowing rather than widening at this point.  We therefore hold FedEx to its decision not to argue to us that Prongs 1 and 3 are preempted, and for that reason alone vacate and reverse the district court's ruling that Prongs 1 and 3 are preempted.

## V.

Finally, we are left with Plaintiffs' argument that the district court should have granted summary judgment for them under Prong 1 or 3 of § 148B(a).  Denials of summary judgment are

customarily not appealable final orders.  <u>Rogers</u> v. <u>Fair</u>, 902 F.2d 140, 142 (1st Cir. 1990).  Moreover, the analysis required to determine whether Plaintiffs should have been considered employees under Prong 1 or 3 has very little overlap with our analyses of the preemption or severability issues.  So, even if we had appellate jurisdiction to review whether Plaintiffs have shown on summary judgment that they were employees under Prong 1 or 3, it would be unwise to do so before the district court does so.

## VI.

Consistent with the foregoing, we <u>affirm</u> the district court's holding that Plaintiffs' proposed application of Prong 2 to the individuals who provide first-and-last mile pickup and delivery services for FedEx is preempted; we <u>reverse</u> the district court's holdings that Prong 2 is not severable and that Prongs 1 and 3 are preempted; and we <u>remand</u> for further proceedings consistent with this opinion.  No costs are awarded to either party.