# United States Court of Appeals
## For the First Circuit

No. 15-1908

MASSACHUSETTS DELIVERY ASSOCIATION,

Plaintiff, Appellee,

v.

MAURA T. HEALEY, in her official capacity as
Attorney General of the Commonwealth of Massachusetts,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Douglas S. Martland, Assistant Attorney General, with whom
Maura Healey, Attorney General of Massachusetts, was on brief, for
appellant.
David C. Casey, with whom Christopher B. Kaczmarek, Stephen
T. Melnick, and Littler Mendelson, P.C. were on brief, for
appellee.

May 11, 2016

**LYNCH**, **Circuit Judge**.    The question in this case is whether the express preemption provision of the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), preempts the application of "Prong 2" of the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149, § 148B(a)(2), to the same-day delivery companies that constitute the Massachusetts Delivery Association ("MDA").    This court previously remanded this case to the district court for a determination, on review of the full evidentiary record, of whether Prong 2 is FAAAA-preempted because it "relate[s] to" the prices, routes, or services of the motor carriers.    Mass. Delivery Ass'n v. Coakley (MDA II), 769 F.3d 11, 23 (1st Cir. 2014).    On remand, the district court, at summary judgment, answered in the affirmative.    Mass. Delivery Ass'n v. Healey, 117 F. Supp. 3d 86, 97–98 (D. Mass. 2015).

    After the filing of the appeal in this case, this court held in Schwann v. FedEx Ground Package System, Inc. that the FAAAA preempts the application of Prong 2[1] to the nationwide package delivery service FedEx.    813 F.3d 429, 432 (1st Cir. 2016).    Applying the reasoning in Schwann, we affirm.

---

[1]    An earlier appeal of this case referred to this subsection as "Prong B."  We now adopt the term "Prong 2," as used in Schwann.

The MDA is a trade organization representing same-day delivery service companies in Massachusetts. The MDA brought this suit on behalf of its members, seeking a declaration that Prong 2 is preempted by the FAAAA as well as an injunction barring the Attorney General from enforcing Prong 2 against its members. The MDA chose one member, X Pressman Trucking & Courier, Inc. ("Xpressman"), as an exemplar for this litigation.

Xpressman offers its clients both scheduled-route and on-demand deliveries. For scheduled-route deliveries, packages are picked up and dropped off at regular times and places. Xpressman's scheduled routes are serviced by forty-six couriers. Xpressman selects scheduled-route couriers by soliciting bids through online advertisements and awarding the route to whoever advances the best bid. For on-demand deliveries, the times, locations, and total number of deliveries are variable and unpredictable. Each day, couriers provide Xpressman with their availability to make on-demand deliveries, and Xpressman matches on-demand delivery requests with available couriers. It was represented to us at oral argument that up to a dozen couriers submit their availability for on-demand deliveries each day and that that number comprises different individuals from day to day.

Xpressman considers its couriers to be independent contractors. Xpressman's couriers drive their own cars and trucks.

They are paid for each route they complete and they do not receive benefits such as health insurance, retirement, or workers' compensation. Meanwhile, Xpressman has six full-time and two part-time workers, whom Xpressman classifies as employees, for administrative and warehouse duties. Those workers are paid on an hourly or salary basis, and they receive benefits such as health insurance, retirement, and workers' compensation.

The basic premise of the MDA's claim is that Massachusetts law forces Xpressman and other MDA members to designate their couriers as employees rather than as independent contractors, as its member companies have classified them. The relevant Massachusetts law is the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149, § 148B, which establishes a three-prong test to determine who is an "employee" for the purposes of Massachusetts General Laws Chapters 149 and 151. A worker is considered an employee rather than an independent contractor unless the employer can meet all three prongs:

> For the purpose of this chapter and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:
> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,

> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B(a).  The second requirement is what we have termed "Prong 2."  Schwann, 813 F.3d at 433.  The MDA claims that Prong 2's requirement that an independent contractor only perform services "outside the usual course of the business of the employer" makes it impossible for its member delivery companies to treat their couriers as independent contractors.  We recognized in Schwann that this characteristic of Prong 2 -- that "it makes any person who performs a service within the usual course of the enterprise's business an employee" -- is "something of an anomaly" among state wage laws.  Id. at 438.

The MDA argues that because the application of Prong 2 would require its member companies to treat their couriers as employees, the application of Prong 2 to its members is preempted by the FAAAA.  The FAAAA's express preemption provision states:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphases added). The MDA argues that by requiring its member companies to treat their couriers as employees rather than as independent contractors, the Massachusetts law "relate[s] to" their prices, routes, or services and is FAAAA-preempted.

The MDA filed this suit on September 7, 2010. On April 8, 2011, the district court dismissed the case on the basis of abstention under Younger v. Harris, 401 U.S. 37 (1971). In the first appeal in this case, this court reversed and remanded. Mass. Delivery Ass'n v. Coakley (MDA I), 671 F.3d 33, 35 (1st Cir. 2012).

On remand, the parties filed cross-motions for summary judgment. The district court denied the MDA's motion and allowed the Attorney General's motion in part, holding that Prong 2 was not preempted by the FAAAA. In the second appeal in this case, this court vacated and remanded. MDA II, 769 F.3d at 23. We instructed the district court on remand to determine, on a full evidentiary record, id., whether Prong 2 "expressly references, or has a significant impact on, carriers' prices, routes, or services," id. at 17-18. In doing so, we "express[ed] no view on the sufficiency of the evidence before the district court." Id. at 22.

On remand, the parties renewed their cross-motions for summary judgment. The MDA argued that Prong 2 was preempted both as a matter of logical effect and by record evidence showing an

impermissible significant impact on prices, routes, or services. The Attorney General argued for summary judgment based on the lack of any such significant impact. In the alternative, the Attorney General argued that the MDA's motion for summary judgment should be denied because of the existence of genuine issues of material fact.

On July 8, 2015, the district court entered summary judgment for the MDA and held that the FAAAA preempts Prong 2 as to the members of the MDA as a matter of logical effect. Mass. Delivery Ass'n, 117 F. Supp. 3d at 97-98. At the same time, the district court denied the Attorney General's motion for summary judgment. Id.

This appeal followed.

## II.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Flovac, Inc. v. Airvac, Inc., No. 15-1571, 2016 WL 1319274, at *2 (1st Cir. Apr. 4, 2016). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Recently, in Schwann, this court faced a suit by delivery drivers who claimed that, under the same Massachusetts statute at issue here, FedEx should have treated them as employees rather

- 7 -

than as independent contractors. 813 F.3d at 432. We affirmed the district court's holding that the FAAAA preempted the application of the Prong 2 requirement to FedEx. Id.

Our analysis in Schwann began by recognizing that FAAAA preemption is purposefully expansive and may occur even when the state law has only an indirect effect on prices, routes, or services. Id. at 436 (citing MDA II, 769 F.3d at 18). "[A] state statute is preempted if it expressly references, or has a significant impact on, carriers' prices, routes, or services." Id. (quoting MDA II, 769 F.3d at 17–18); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 388 (1992). Significant impact may be proven by "empirical evidence" or "the logical effect that a particular scheme has on the delivery of services," or some combination of each. Schwann, 813 F.3d at 437 (quoting MDA II, 769 F.3d at 21).

We concluded that the application of Prong 2 to FedEx would both expressly reference and have a significant impact on FedEx's prices, routes, or services. As to the former, we found express reference because the application of Prong 2 to FedEx would require "a judicial determination of the extent and types of motor carrier services that FedEx provides" in order to determine whether that service is within the usual course of business of FedEx. Id. at 437–38.

As to the latter, we found that the application of Prong 2 would have a significant impact, as a matter of logical effect, on FedEx's services and routes.  The application of Prong 2 would logically have a significant impact on FedEx's services because it would take away from FedEx "[t]he decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor."  Id. at 438.  The application of Prong 2 would deprive FedEx of the choice of "providing for first-and-last mile pick-up and delivery services through an independent person who bears the economic risk associated with any inefficiencies in performance," id. at 439, and as a result, "a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them," id. at 438.  We went on to conclude that the application of Prong 2 would also have a logical effect on FedEx's routes because it would not allow "delegat[ion of] the precise design of the route to [a] contractor, who assume[s] the risks and benefits of increased or decreased efficiencies achieved by the selected routes."  Id. at 439.

In Remington v. J.B. Hunt Transport, Inc., decided the same day as Schwann, this court faced a challenge to the application of Prong 2 to another freight and package delivery company in Massachusetts.  No. 15-1252 (1st Cir. Feb. 22, 2016).  Faced with arguments that "materially mirror[ed] those in

Schwann," we concluded that as in Schwann, "application of Prong 2 to the independent-contractor drivers for J.B. Hunt is preempted." Id., slip op. at 2.

The Attorney General asks us to reconsider Schwann, saying that it was wrongly decided. But under the law of the circuit doctrine, we are "bound by a prior panel decision, absent any intervening authority." United States v. Mouscardy, 722 F.3d 68, 77 (1st Cir. 2013) (quoting United States v. Grupee, 682 F.3d 143, 149 (1st Cir. 2012)). The Attorney General points to no such intervening authority. The decisions from other circuits that the Attorney General argues are inconsistent with Schwann -- Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016), Amerijet International, Inc. v. Miami-Dade County, 627 F. App'x 744 (11th Cir. 2015) (per curiam), and Dilts v. Penske Logistics, LLC, 769 F.3d 637 (9th Cir. 2014) -- were already considered by this court in Schwann. Those decisions were also raised in the petition for rehearing and the petition for rehearing en banc in Schwann, which were both denied.

Applying the reasoning in Schwann, we find that the FAAAA preempts the application of Prong 2 to Xpressman. As in Schwann, application of Prong 2 to Xpressman would require a judicial determination of whether a particular service offered by Xpressman fits within its usual course of business. See Schwann, 813 F.3d

- 10 -

at 437-38.  As such, Prong 2 expressly references Xpressman's services.

Also, as in Schwann, application of Prong 2 to Xpressman would logically have a significant effect on Xpressman's routes and services.  The Attorney General attempts to distinguish Schwann on the basis that in Schwann, FedEx's relationship with its drivers was governed by an Operating Agreement under which each contractor acquired an exclusive and transferable interest in the customer accounts located in particular FedEx delivery areas.  Id. at 432.  By contrast, the Attorney General points out, Xpressman's couriers do not operate under such agreements but are instead chosen by bidding for routes in response to online advertisements.

It is true that FedEx's particular arrangement with its drivers was significant to the Schwann decision.  We recognized that by relying on such an arrangement, FedEx gave drivers "an economic incentive to keep costs low, to deliver packages efficiently, and to provide excellent customer service."  Id. at 439.  We reasoned that the application of Prong 2, by preventing FedEx from employing such an arrangement, would "substantially restrain the free-market pursuit of perceived efficiencies and competitive advantage" of such an arrangement and thereby dictate "what services that company provides and how it chooses to provide them."  Id. at 438.  Additionally, we concluded that preventing FedEx from offering such economic incentives to drivers would

logically be expected to have a significant impact on routes. Id. at 439. In Remington, we concluded that the application of Prong 2 to the motor carrier J.B. Hunt would similarly deprive J.B. Hunt of its pursuit of perceived efficiencies, even though J.B. Hunt's particular arrangement with its drivers was different from that of FedEx. Remington, slip op. at 2.

Xpressman does not use the same arrangement as either FedEx or J.B. Hunt, but Schwann's reasoning applies nonetheless. Like FedEx's drivers, Xpressman's couriers bear the expenses of delivering packages and receive compensation based on the number of packages delivered. As far as the record indicates, Xpressman's couriers are free to decide what route to follow in making deliveries, just as the FedEx drivers were. As such, Xpressman, like FedEx, has structured its relationship with its couriers to incentivize its couriers to keep costs low and to deliver packages efficiently. See Schwann, 813 F.3d at 439. Further bolstering such an incentive is Xpressman's competitive bidding system in which routes are awarded to the couriers that submit the lowest bids.

Application of Prong 2 to Xpressman would, as in Schwann, deprive Xpressman of its choice of method of providing for delivery services and incentivizing the persons providing those services. As a matter of logic, such a restraint on Xpressman's pursuit of perceived economic efficiencies "would ultimately determine what

services that company provides and how it chooses to provide them." Id. at 438. Likewise, application of Prong 2 would logically be expected to have a significant impact on Xpressman's routes.

Applying the logic of Schwann, we hold that the application of Prong 2 to the members of the MDA is preempted by the FAAAA. We affirm.