# United States Court of Appeals
## For the First Circuit

Nos. 15-2011, 15-2012

BRENDA PIPPIN, GRACE PARKER,

Plaintiffs, Appellants,

v.

BOULEVARD MOTEL CORP., d/b/a Comfort Inn South Portland Hotel,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before
Torruella and Barron, Circuit Judges,
and Lisi,* District Judge.

James A. Clifford, with whom Andrew P. Cotter and Clifford & Clifford, LLC, were on brief, for appellants.
Barbara Archer Hirsch for Maine Human Rights Commission, amicus curiae.
Katharine I. Rand, with whom James R. Erwin, Michelle Y. Bush, and Pierce Atwood LLP were on brief, for appellee.
Anne Noel Occhialino, Attorney, Equal Employment Opportunity Commission, P. David Lopez, General Counsel, Jennifer S. Goldstein, Associate General Counsel, and Lorraine C. Davis, Assistant General Counsel, on brief for Equal Employment Opportunity Commission, amicus curiae.

August 31, 2016

* Of the District of Rhode Island, sitting by designation.

**BARRON**, **Circuit Judge**.  Plaintiffs Brenda Pippin and Grace Parker are former employees of the Boulevard Motel Corporation ("Boulevard").  They filed complaints that alleged that Boulevard fired them in violation of the Maine Whistleblowers' Protection Act ("MWPA") and the Maine Human Rights Act ("MHRA").  The District Court granted summary judgment for Boulevard, relying on a purported "job duties exception" to both statutes.  On appeal, the parties agree that our intervening decision in Harrison v. Granite Bay Care, Inc., 811 F.3d 36 (1st Cir. 2016), made clear that no "job duties exception" exists under either the MWPA or, by implication, the MHRA.  But Boulevard argues that we nonetheless can affirm the District Court's ruling because it is supportable on other grounds.  Because we disagree that other grounds support the order granting summary judgment, we reverse.

                                  **I.**

        "On review of an order granting summary judgment, we recite the facts in the light most favorable to the nonmoving part[ies]."  Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157–58 (1st Cir. 2016).  Thus, we present the facts in the light most favorable to the plaintiffs.

        This case concerns an incident of sexual harassment that occurred at the Comfort Inn Hotel in South Portland, Maine.  The hotel is owned by the defendant, Boulevard.  The plaintiffs are

Pippin, the hotel's former executive housekeeper, and Parker, the hotel's former assistant executive housekeeper.

The incident involved a maintenance worker at the hotel making graphic, sexual comments to a female housekeeper about her body. The victim -- along with Pippin and Parker -- made the initial report of the incident to the defendant. The three women made that report to the hotel's general manager, Beth Landergren. At that initial meeting on April 27, 2010, Pippin told Landergren: "[the victim] needs to talk to you. . . . she has gone through some incidents with [the maintenance worker] . . . and it's not pleasant." The victim then proceeded to describe the incident to Landergren.

In the course of the defendant's resulting investigation of the incident, the plaintiffs each also made oral and written statements about it to Ignacio Mello, the defendant's human resources manager.[1] On May 11, 2010, after the investigation had come to a close, the defendant sent a written reprimand to the

---

[1] Parker also helped the victim, who struggled to write in English, to write a statement to submit to Mello in connection with his investigation. At the end of the letter Parker wrote on behalf of the victim, Parker wrote: "This is written by Grace Parker because [the victim] can not spell and write English very well." Parker then included a postscript in which she recounted the victim's description of the impact of the incident on her. Parker concluded the postscript by writing: "[The victim] also mentioned that this entire incident was embarrassing and very hard to talk about. I told her she has done nothing wrong."

maintenance worker. No further disciplinary action was taken against him.

More than three weeks later, on June 2, 2010, each plaintiff sent another written statement to Mello. Parker's statement described a conversation with a co-worker, Veronica Connolly, in which Connolly had reported feeling pressured by Landergren to protect the accused harasser during the investigation. Pippin's statement recounted a meeting that she had with the victim and Landergren the day before, during which the victim had accused Landergren of, among other things, only caring about "saving [the accused harasser]."

In 2011, both plaintiffs were terminated from their employment by the defendant. On March 21, 2014, each plaintiff brought suit, in two separate complaints, in Maine Superior Court. Each plaintiff alleged that her termination violated both the MWPA, which protects an employee who, in good faith, "reports orally or in writing to [her] employer or a public body what the employee has reasonable cause to believe is a violation of [] law" by her employer, Me. Rev. Stat. tit. 26, § 833; Costain v. Sunbury Primary Care, P.A., 954 A.2d 1051, 1054 (Me. 2008), and the antiretaliation provision of the MHRA, which prohibits "discriminat[ion] against any individual because that individual has opposed any act or practice that is unlawful under [the MHRA]," see Me. Rev. Stat. tit. 5, § 4633.

- 4 -

Boulevard removed the two cases to federal court on April 22, 2014. On February 27, 2015, Boulevard filed a motion for summary judgment in each case, contending that neither plaintiff had engaged in activity protected by either statute. In its ruling on the motions, the District Court concluded that a "job duties exception" applied under both the MWPA and the MHRA, that Pippin and Parker were carrying out their job duties in making the initial report of harassment, and that the letters the plaintiffs sent after the defendant ended the investigation were not made in opposition to any unlawful activity by the employer. Based on those conclusions, the District Court granted Boulevard's motion as to both plaintiffs. At the end of its opinion, however, the District Court stated that it had "misgivings" about the application of the job duties exception to each statute and that it was "concerned that the job duties exception ha[d] denied Ms. Pippin and Ms. Parker their day in court."

The plaintiffs separately appealed, and we consolidated the two appeals. On January 8, 2016, the plaintiffs filed their initial brief. Five days later, we issued a decision in Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 49 (1st Cir. 2016), in which we made clear that no "broad-based job duties exception" applied under the MWPA. We explained that "although a particular employee's job duties may be relevant in discerning his or her actual motivation in reporting information, those duties are not

dispositive of" whether the employee engaged in protected activity under the statute.  Id. at 51.  In light of Harrison, we asked the plaintiffs to file a new brief and adjusted the briefing schedule accordingly.  A full round of briefing,[2] along with oral argument, followed.

## II.

Before turning directly to our review of the District Court's order, we need to provide some background regarding both the applicable law and the arguments that the parties are making on appeal.  We start with the claims arising under the MWPA and then turn to those arising under the MHRA.

To obtain relief under the MWPA, a plaintiff must show that "(1) she engaged in activity protected by the [M]WPA; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action."  Walsh v. Town of Millinocket, 28 A.3d 610, 616 (Me. 2011).  The parties agree that only the first of these three elements is at issue on appeal, as the defendant did not move for summary judgment on any other ground.

The parties are less than clear as to which of the plaintiffs' actions constitutes the potentially qualifying

---

[2]  We thank amici curiae Equal Employment Opportunity Commission and Maine Human Rights Commission for their briefs in support of reversal.

- 6 -

"report[]" under the MWPA. See Me. Rev. Stat. tit. 26, § 833(1)(A). But the plaintiffs do not argue that their post-investigation letters to Mello standing alone would constitute such a report. The plaintiffs thus appear to be contending that their initial report is the one that qualifies, at least when considered in light of their later conduct. The defendant, for its part, does not appear to contest that we may evaluate the plaintiffs' course of conduct as a whole in determining whether that initial report qualifies as protected activity. Nor does the defendant challenge the plaintiffs' assertion that the initial report concerning the maintenance worker's harassment constitutes a potentially qualifying report of unlawful conduct committed by the plaintiffs' employer.

Of course, the District Court concluded that the plaintiffs' initial report was not protected activity under the MWPA based on its conclusion that pre-Harrison precedent set forth a "job duties exception" to the MWPA. But Harrison made clear that "the critical point when analyzing whether a plaintiff has made out the first element of a [MWPA] claim -- engaging in activity protected by the Act -- is an employee's motivation in making a particular report or complaint." 811 F.3d at 51. Thus, as we explained in Harrison, a plaintiff may be deemed to have engaged in activity protected by the MWPA even if the report of unlawful activity she makes is one her employer required her to

- 7 -

make as part of her job duties.  The employee need only show that her "report was made to shed light on and 'in opposition to' [the defendant]'s potential illegal acts."  Id.

Turning to the plaintiffs' claims under § 4633 of the MHRA,[3] the statute prohibits discrimination against any individual who "has opposed an[] act or practice that is unlawful under [the MHRA]," Me. Rev. Stat. tit. 5, § 4633.  The only element of the plaintiffs' claims under this statute that is in dispute on appeal is, once again, whether the plaintiffs engaged in protected activity under the statute.  And although the District Court relied on a job duties exception in ruling that the plaintiffs did not, the defendant concedes that -- at least after Harrison -- the plaintiffs can show that they engaged in protected activity so long as they can show that their initial report was made in opposition to the maintenance worker's harassment, which the parties agree was conduct that is unlawful under the MHRA.

Against this background, our task is clear. Because neither party has asked us to remand to allow the District Court to further consider the motions for summary judgment on the underlying claims in light of Harrison, and because we may affirm the District Court on any ground made manifest in the record,

_____

[3] Other provisions of the MHRA constitute the source of an employee's right of action for a violation of the MWPA.  See Me. Rev. Stat. Ann. tit. 5, §§ 4572, 4621; Harrison, 811 F.3d at 46 n.12.

- 8 -

Walsh, 821 F.3d at 161, we must now decide what the evidence shows regarding whether the plaintiffs' initial report to their employer was made "in opposition to" the harassment being reported. See Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 69 (1st Cir. 2016) (explaining that, for purposes of summary judgment, "[a] 'genuine' dispute exists when a jury can reasonably interpret the evidence in the non-movant's favor"). Only if the record shows "that there is 'no genuine dispute as to any material fact'" regarding whether that report was made with the requisite oppositional motivation would the District Court's orders granting summary judgment be proper. Massachusetts Delivery Ass'n v. Healey, 821 F.3d 187, 191 (1st Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). Our review is de novo, and we must "view[] the facts in the light most favorable to the non-moving part[ies]," the plaintiffs. Id.

### III.

The defendant contends that, even under Harrison, the evidence supporting the plaintiffs' claims that they engaged in protected activity under the MWPA and under § 4633 of the MWPA is insufficient to permit the plaintiffs' claims to survive summary judgment. Specifically, the defendant argues that the evidence reveals that the plaintiffs "merely ensured that [the victim]'s complaint . . . was passed up the chain" and provided what "information they had in the context of written statements and interviews." And the defendant further contends that the evidence

shows that the plaintiffs never expressed "any personal opinion about [the accused harasser]'s actions or concern about [d]efendant's response to [the victim]'s harassment complaint." For that reason, the defendant contends that the record is devoid of evidence that the plaintiffs acted with the requisite oppositional intent.

But, as we have explained in an analogous context, opposition to unlawful activity may take forms other than express statements of opposition. Rather, "employees may communicate their views to their employers through 'purposive conduct.'" Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 47 (1st Cir. 2010) (addressing a claim under Title VII of the 1964 Civil Rights Act) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 281 (2009) (Alito, J., concurring)); accord DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (recognizing that courts have taken "an expansive view of what constitutes oppositional conduct" under Title VII).[4] And, here, the plaintiffs contend that the record as a whole shows that they did just that. See DeMasters, 796 F.3d at

---

[4] Maine courts have made clear that, in adopting the MHRA, "the Maine legislature by adopting provisions that generally track the federal antidiscrimination statutes intended the courts to look to the federal case law to 'provide significant guidance in the construction of [the Maine] statute.'" Maine Human Rights Comm'n v. City of Auburn, 408 A.2d 1253, 1261 (Me. 1979) (quoting Maine Human Rights Comm'n v. Local 1361, Me., 383 A.2d 369, 375 (Me. 1978)).

418 ("[W]e must examine the course of a plaintiff's conduct through a panoramic lens, viewing the individual scenes in their broader context and judging the picture as a whole.")

In particular, the plaintiffs point not only to their role in initially reporting the harassment to a supervisor but also to the evidence of their unsolicited, post-investigation letters to Mello concerning how the allegation of harassment had been handled by the defendant. They contend that this evidence -- considered as a whole -- supports a reasonable inference that, in initially reporting the harassment, they were motivated not only by their interest in fulfilling their job duties but also by their opposition to the employer's unlawful conduct. The defendant, by contrast, contends that even viewing the plaintiffs' course of conduct as a whole, there is no evidence that any of the plaintiffs' conduct was taken with the requisite motivation. We disagree.

The record shows that Pippin and Parker did more than simply facilitate the victim's lodging of her complaint and then cooperate with the ensuing investigation. Rather, the record reveals that three weeks after that investigation into the complaint of harassment had come to an end, Pippin had a meeting with the victim and Landergren at which the victim told Landergren that she was unhappy with the defendant's resolution of her complaint. The record then shows that, the next day, Pippin and

- 11 -

Parker, apparently on their own initiative, each sent handwritten letters to Mello recounting ongoing concerns that their co-workers, including the victim, had about the integrity of the investigation.

In her letter, Pippin wrote that the victim stated during that meeting that Landergren only cared about "saving [the accused harasser]" and that the victim did not trust Landergren. Pippin also wrote that the victim told Landergren that a co-worker, Connolly, had apologized to the victim for lying during the investigation and that Connolly had said she would have been fired if she had not lied. Parker's separate letter to Mello described a conversation that she had with Connolly in which Connolly stated that she had felt pressured by Landergren to "go along with [her] about the [harassment] situation" and that she felt she would have been fired if she had not.

Thus, the record, read in the light most favorable to the plaintiffs, shows that the plaintiffs were fired after continuing to raise concerns about the handling of an investigation into a complaint of sexual harassment that they, along with the victim, had first reported to the employer. And the record further supports the plaintiffs' claims that they continued to press these concerns even after the employer's investigation had ended and even though they were apparently under no obligation to their employer to do so. See Harrison, 811 F.3d at 51 ("[A] particular

- 12 -

employee's job duties may be relevant in discerning his or her actual motivation in reporting information, [although] those duties are not dispositive of the question.").

To be sure, this is a close case. The plaintiffs' initial reports of harassment involved little more than Pippin's telling Landergren that the victim needed to talk to her about something that was "not pleasant." And perhaps Pippin and Parker sent their post-investigation letters purely out of an interest in ensuring the proper handling of internal investigations or in informing the human resources department about unrest among their co-workers.

But a reasonable jury would not be required to draw either of those inferences. Rather, a trier of fact reasonably could draw the common-sense inference that these employees, who first were involved in reporting an incident of harassment to their employer and then persisted in raising concerns to their employer about an internal investigation of that incident following a meeting in which the victim expressed concerns about how her initial complaint had been handled, were motivated throughout by their opposition to the employer's unlawful conduct. See Ballew v. Georgia, 435 U.S. 223, 233-34 (1978) (discussing the importance of a jury's "application of the common sense of the community to the facts of any given case"); CSX Transp., Inc. v. McBride, 564 U.S. 685, 700 (2011) (referring to a jury's use of "experience and

common sense"); <u>United States</u> v. <u>Smith</u>, 680 F.2d 255, 260 (1st Cir. 1982) ("Neither juries nor judges are required to divorce themselves of common sense . . . ."). Thus, a jury reasonably could conclude that their initial report of harassment to their employer "was made to shed light on and 'in opposition to' [the defendant]'s potential illegal acts." See <u>Harrison</u>, 811 F.3d at 51.[5] And, as the defendant concedes, if a jury reasonably could reach that conclusion, then we must reverse the District Court's orders granting summary judgment.

Of course, on remand it is possible that the jury will find that the plaintiffs did not engage in protected activity under either statute or that the plaintiffs' claims may fail for some other reason. But those possibilities are just that. They provide no basis for affirming the summary judgment rulings concerning whether the plaintiffs engaged in protected activity under the MWPA or § 4633 of the MHRA, and thereby denying the plaintiffs the opportunity to convince a jury otherwise. See <u>Rubinovitz</u> v. <u>Rogato</u>, 60 F.3d 906, 912 (1st Cir. 1995) (vacating a grant of summary judgment even while recognizing that "the case might be a difficult one for the plaintiffs," given the Court's "obligation

---

[5] For this reason, the defendant's contention that the plaintiffs' post-investigation letters themselves constituted direct opposition only to the allegedly biased investigation, and not to the harassment giving rise to that investigation, is beside the point.

- 14 -

to draw all reasonable inferences in favor of the party opposing summary judgment").

## IV.

For the reasons set forth above, we **reverse** the order of the District Court granting summary judgment and **remand** this case for further proceedings consistent with this opinion.