**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2346
_____

ALEJANDRO LUPIAN; JUAN LUPIAN; JOSE REYES;
EFFRAIN LUCATERO; ISAIAS LUNA, individually and on
behalf of those similarly situated

v.

JOSEPH CORY HOLDINGS LLC,

Appellant
_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. No. 2:16-cv-05172)
District Judge:  Hon. William J. Martini

Argued:  February 7, 2018

Before:  CHAGARES, SCIRICA, and COWEN, <u>Circuit
Judges</u>.

(Filed:  September 27, 2018)

Adam C. Smedstad **[ARGUED]**
Andrew J. Butcher
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street
Suite 600
Chicago, IL 60603

Christopher J. Eckhart
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Suite 1400
10 West Market Street
Suite 1400
Indianapolis, IN 46204

Peter F. Berk
Genova Burns
494 Broad Street
Newark, NJ 07102

Counsel for Appellant

Harold L. Lichten **[ARGUED]**
Michael N. Turi, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street
Suite 2000
Boston, MA 02116

Shanon J. Carson
Camille Fundora
Alexandra K. Piazza
Sarah R. Schalman-Bergen

Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

      <u>Counsel for Appellees</u>

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC 20009

      <u>Counsel for Amicus Curiae Public Citizen, Inc.</u>

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

      Alejandro Lupian, Juan Lupian, Isaias Luna, Jose Reyes, and Efrain Lucatero (collectively, "the Drivers") are professional delivery drivers who separately contracted to provide equipment and services to Joseph Cory Holdings LLC ("Joseph Cory"), a motor carrier and property broker. The Drivers filed a class action complaint alleging that Joseph Cory deducted wages from their paychecks without obtaining contemporaneous consent in violation of the Illinois Wage

Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1–115/15. Joseph Cory moved to dismiss, arguing that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Pub. L. No. 103-305, 108 Stat. 1569, 1606, 49 U.S.C. §§ 14501–06, preempts the IWPCA. The District Court, inter alia, denied Joseph Cory's motion, holding that the FAAAA did not preempt the Drivers' IWPCA claims. For the reasons that follow, we will affirm the District Court's order.

I.

The contracts between the Drivers and Joseph Cory purported to establish that the Drivers would work as independent contractors, although the Drivers claim the realities of their relationship made them Joseph Cory's employees under the IWPCA. The contracts expressly permitted Joseph Cory to take "[c]hargebacks" for any expense or liability that the Drivers had agreed to bear — "expenses [that] shall be deducted from the amount of [the Drivers'] compensation." Appendix ("App.") 44, 50. Joseph Cory deducted these expenses — including costs for "insurance, any related insurance claims, truck rentals, . . . uniforms," and "damaged goods" — from the Drivers' paychecks without obtaining contemporaneous consent. App. 20.

The Drivers filed a lawsuit against Joseph Cory in the United States District Court for the District of New Jersey, claiming, inter alia, that Joseph Cory's practice of deducting wages from their paychecks and those of similarly situated employees without contemporaneous consent violated the IWPCA's wage-deduction provision, 820 Ill. Comp. Stat.

4

115/9.[1]  The Drivers' complaint alleged a putative class action under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), in which the Drivers would be the named plaintiffs. Joseph Cory moved to dismiss the IWPCA claims under Federal Rule of Civil Procedure 12(b)(6), arguing that the FAAAA preempted the IWPCA.  The District Court denied Joseph Cory's motion to dismiss, holding that, on its face, the IWPCA's connection to the FAAAA's subject matter was too attenuated to trigger preemption.  Lupian v. Joseph Cory Holdings, LLC, 240 F. Supp. 3d 309, 317 (D.N.J. 2017).[2]

The District Court certified its order for an interlocutory appeal under 28 U.S.C. § 1292(b), and we granted Joseph Cory's petition to appeal the certified interlocutory order.[3]

---

[1] The complaint alternatively alleged similar violations of New Jersey law.  The District Court determined that Illinois law applied and dismissed the Drivers' New Jersey law-based claims.  Lupian v. Joseph Cory Holdings, LLC, 240 F. Supp. 3d 309, 313–14 (D.N.J. 2017).  On appeal, the parties do not disagree that Illinois law should be applied, nor do we.

[2] In addition to dismissing the counts in the complaint alleging violations of New Jersey law, the District Court also dismissed the count alleging unjust enrichment under Illinois law.  The Drivers do not contest these rulings on appeal.

[3] The District Court exercised jurisdiction over this matter pursuant to CAFA, 28 U.S.C. § 1332(d)(2).  This Court has jurisdiction under 28 U.S.C. § 1292(b), which permits discretionary interlocutory review when a district judge certifies that an order not otherwise appealable "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal

II.

A.

Joseph Cory moved to dismiss the Drivers' IWPCA claim based on federal preemption. This Court conducts plenary review of the grant or denial of a motion to dismiss based on preemption. Rosenberg v. DVI Receivables XVII, LLC, 835 F.3d 414, 418 (3d Cir. 2016). Facts alleged in the complaint are accepted as true for purposes of the motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Preemption is an affirmative defense that the defendant has the burden to prove. In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016). Therefore, Joseph Cory has the burden to demonstrate that the Drivers' state-law claims under the IWPCA are preempted. To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense,[4] as Joseph Cory seeks to do here, a defendant must show that "the defense is 'apparent on the face of the complaint' and documents relied on in the complaint." Bohus v. Restaurant.com, Inc., 784 F.3d 918, 923 n.2 (3d Cir. 2015) (quoting Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014));

from the order may materially advance the ultimate termination of the litigation."

[4] It has been suggested that the more appropriate vehicles for determining whether a claim is preempted are a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or a motion for summary judgment under Federal Rule of Civil Procedure 56. See In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d at 133 n.6; Fisher v. Halliburton, 667 F.3d 602, 609 (5th Cir. 2012).

6

see also Jones v. Bock, 549 U.S. 199, 215 (2007); Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001). Put another way, dismissal is appropriate under Rule 12(b)(6) only when "preemption is manifest in the complaint itself." In re Asbestos Prods. Liab. Litig., 822 F.3d at 133 n.6; see also Simmons v. Sabine River Auth., 732 F.3d 469, 473 (5th Cir. 2013).

The doctrine of preemption is derived from the Supremacy Clause of Article IV of the Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI. Thus, state law "which interferes with or is contrary to federal law, must yield." Free v. Bland, 369 U.S. 663, 666 (1962). There are three types of federal preemption: field preemption, implied conflict preemption, and — as is relevant here — express preemption. See Kurns v. A.W. Chesterson Inc., 620 F.3d 392, 395 (3d Cir. 2010). Express preemption requires a analysis of whether "[s]tate action may be foreclosed by express language in a congressional enactment." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001).

When a federal statute contains a provision preempting state law claims that pertain to "areas of traditional state regulation" or police power, we apply a presumption against preemption. Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (1992); see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995).[5] Areas of traditional state regulation or police power

---

[5] Joseph Cory argues that the Supreme Court no longer applies the presumption against preemption in express preemption cases, citing language in Puerto Rico v. Franklin

7

include regulation of "the employment relationship to protect workers in the State" such as regulation of "minimum and other wage laws." DeCanas v. Bica, 424 U.S. 351, 356 (1976), superseded by statute on other grounds as recognized in Arizona v. United States, 567 U.S. 387, 404 (2012); see also Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987) ("[P]re-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."). The Supreme Court in City of Columbus v. Ours Garage & Wrecker Service, Inc., considered another issue under the FAAAA preemption clause and applied this presumption against preemption, noting that its "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" 536 U.S. 424, 438 (2002) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). To discern Congress's purpose, we look first to the plain language employed in the statutory provision at issue,[6] and, if necessary,

_____

Cal. Tax-Free Tr., 136 S. Ct. 1938, 1946 (2016). However, we have determined that, because that decision, dealing with a Bankruptcy Code provision, did not address claims involving areas historically regulated by states, we would continue to apply the presumption against preemption to express preemption claims. Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 771 n.9 (3d Cir. 2018). We note that we would reach the same result in this case even if this presumption was not applied.

[6] See Travelers Ins. Co., 514 U.S. at 655; see also Chamber of Commerce of U.S. v. Whiting, 563 U.S. 582, 594 (2011) ("[W]e 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive

8

the statutory structure as a whole, Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977), as well as our "understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law," Medtronic, Inc., 518 U.S. at 486.

B.

1.

Prior to 1978, the interstate airline industry in the United States was tightly regulated by the federal government. See Federal Aviation Act of 1958, Pub. L. No. 85–726, 72 Stat. 731 (codified at 49 U.S.C. §§ 1.01 et seq. (repealed)); see also Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 190 (3d Cir. 1998). Congress determined in 1978 that both consumers and the economy would benefit from open competition in the airline industry, especially in the areas of rates and services, and that this could be achieved by economic deregulation of the industry. Taj Mahal Travel, Inc., 164 F.3d at 190–91 (citing 49 U.S.C. § 1302 (recodified as amended 49 U.S.C. § 40101)). As a result, the Airline Deregulation Act of 1978 (the "ADA"), Pub. L. No. 95-504, 92 Stat. 1705 (codified at 49 U.S.C. §§ 40101, et seq.) was enacted. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992) ("Congress, determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation and low prices' as well as 'variety [and] quality . . . of air transportation services,' enacted the [ADA]." (quoting 49 U.S.C. App. § 1302(a)(4) & (a)(9))). "To ensure that the

---

intent.'" (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993))).

9

States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier." Id. at 378–79 (quoting 49 U.S.C. App. § 1305(a)(1)).

The Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (codified in scattered sections of 49 U.S.C.), similarly deregulated the motor carrier industry, but it did not preempt state regulation of the industry. Over the next fourteen years, however, "[s]tate economic regulation of motor carrier operations [had become] a huge problem for national and regional carriers attempting to conduct a standard way of doing business." City of Columbus, 536 U.S. at 440 (quoting H.R. Rep. No. 103-667, at 87 (1994) (Conf. Rep.)). Congress addressed this concern in 1994 when it enacted the FAAAA, which expressly preempted certain state regulation of the trucking industry. The FAAAA preemption provision provides, in pertinent part:

> a State, political division of a State, or a political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

10

49 U.S.C. § 14501(c)(1).[7] This preemption clause borrows from the language set forth in the ADA,[8] although it does add the qualifying phrase: "with respect to transportation of property." See Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 261 (2013) (quoting 49 U.S.C. § 14501(c)(1)). As recognized by the Supreme Court, "[t]hat phrase 'massively limits the scope of preemption' ordered by the FAAAA." Id. at 261 (quoting City of Columbus, 536 U.S. at 449 (Scalia, J., dissenting)).

2.

The IWPCA applies to all employees and employers in the State of Illinois. 820 Ill. Comp. Stat. 115/1. An "employee" is defined in the IWPCA as, inter alia, a person who is permitted to work by an employer. Id. 115/2.[9] The IWPCA creates wage-related obligations for employers, such as paying employees within certain time periods, id. 115/3–4, paying separated employees, id. 115/5, contributing to employee benefit trusts or funds, id. 115/8, notifying employees about their rate of pay as well as the time and

---

[7] The FAAAA preemption clause contains exceptions not relevant here.

[8] Because of the close similarity in language between the ADA and FAAAA, courts rely upon interpretations of both interchangeably. Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008).

[9] Exceptions to the definition of employee are also included in the IWPCA. See 820 Ill. Comp. Stat. 115/2. Insofar as the Drivers' allegation that they are employees must be accepted as true in considering a motion to dismiss, we need not consider these exceptions.

location of pay, id. 115/10, and paying damages for failing to properly compensate employees, id. 115/14. The Drivers in this case claim that Joseph Cory violated the provision of the IWPCA that requires, in pertinent part:

> deductions by employers from wages or final compensation are prohibited unless such deductions are . . . made with the express written consent of the employee, given freely at the time the deduction is made.

Id. 115/9.

## III.

## A.

The Supreme Court in several decisions has provided guidance "to 'identify the domain expressly pre-empted'" by the FAAAA. Dan's City Used Cars, 569 U.S. at 260 (quoting Lorillard Tobacco Co., 533 U.S. at 541). First, the phrase "related to" in the FAAAA preemption clause refers to state actions having "'a connection with, or reference to, airline' prices, routes, or services" of a motor carrier. Nw., Inc. v. Ginsburg, 572 U.S. 284, 134 S. Ct. 1422, 1430 (2014) (quoting Morales, 504 U.S. at 384). Second, considering the broad scope of the preemption clause, "pre-emption may occur even if a state law's effect on rates, routes, or services 'is only indirect.'" Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 371 (2008) (quoting Morales, 504 U.S. at 386). Third, "pre-emption occurs at least where state laws have a 'significant

impact' related to Congress' deregulatory and pre-emption-related objectives." Id. (quoting Morales, 504 U.S. at 390). Fourth, the FAAAA "does not preempt state laws affecting carrier prices, routes and services 'in only a tenuous, remote, or peripheral . . . manner.'" Dan's City Used Cars, 569 U.S. at 261 (quoting Rowe, 552 U.S. at 371). The Court has noted that, for instance, the FAAAA does not preempt state or local zoning regulations, id. at 264, and state laws prohibiting prostitution, gambling, and "obscene depictions" are too tenuous, remote, and peripheral to be preempted, Morales, 504 U.S. at 390.

In Taj Mahal Travel, we considered the ADA's preemption clause. In that case, a travel agency filed a lawsuit alleging, inter alia, defamation against Delta Airlines after a number of the agency's customers received letters from Delta informing them that their tickets would not be honored because they had been reported as stolen and that Delta had not received the money that the customers paid. 164 F.3d at 188. We reviewed the background of the ADA and noted that our interpretation of the preemption clause began with the presumption against preemption of state law. Id. at 192. That presumption, we acknowledged, rests "on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. (quoting Travelers Ins. Co., 514 U.S. at 655). We then adopted the view "that the preemption clause was intended to prevent states from re-regulating airline operations so that competitive market forces could function." Id. at 194 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995); Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1264–65 (9th Cir. 1998) (en banc)).

13

As a result, in <u>Taj Mahal Travel</u>, we framed the proper inquiry as: "whether a common law tort remedy frustrates deregulation by interfering with competition through public-utility-style regulation." 164 F.3d at 194; <u>see also</u> <u>id.</u> ("We conclude that focusing on the competitive forces of the market . . . leads to a more accurate assessment of Congressional intent."). If a state law does not have such a regulatory effect, we determined, then the state law "is 'too tenuous, remote or peripheral' to be preempted." <u>Id.</u> (quoting <u>Morales</u>, 504 U.S. at 390). Applying this inquiry, we held that the travel agency's defamation claim was not preempted by the ADA. <u>Id.</u> at 195. We reasoned that "[a]pplication of state law in these circumstances does not frustrate Congressional intent, nor does it impose a state utility-like regulation on the airlines." <u>Id.</u> We concluded that the travel agency's defamation suit was "simply 'too tenuous, remote or peripheral' to be subject to preemption." <u>Id.</u>

In <u>Gary v. Air Group, Inc.</u>, we were presented with the issue of whether the ADA's preemption clause barred an employee's wrongful termination lawsuit instituted under New Jersey's whistleblower statute. 397 F.3d 183, 185 (3d Cir. 2005). We again considered the purpose of the preemption clause and the presumption against preemption, noting that the presumption "is particularly apt in the employment law context which 'falls squarely within the traditional police powers of the states, and as such should not be disturbed lightly.'" <u>Id.</u> at 190 (quoting <u>Branche v. Airtran Airways, Inc.</u>, 342 F.3d 1248, 1259 (11th Cir. 2003)). The employer-airline argued that Gary's claim was preempted because his wrongful discharge claim was "'related to' the 'service of an air carrier.'" <u>Id.</u> at 187 (quoting 49 U.S.C. § 41713(b)(1)). Put another way, we considered whether the state law employment claim "ha[d] a

14

'forbidden significant effect' upon The Air Group's 'service.'" Id. We answered that question in the negative and held that Gary's claim — "properly viewed as comparable to a garden variety employment claim," id. at 189 — was not preempted "because its connection to The Air Group's 'service of an air carrier', actual or potential [was] simply too remote and too attenuated to fall within the scope of the [preemption clause]." Id. In support of our holding, we noted that Gary did not interrupt any flights or refuse any assignments and that his actions did not result in the potential interruption of service. Id.

B.

We turn to applying the standards set forth above to determine whether District Court properly denied Joseph Cory's Rule 12(b)(6) motion to dismiss on the basis that the FAAAA did not preempt the Drivers' claims under the IWPCA.

The purpose of the FAAAA's preemption clause is to prohibit states from effectively re-regulating the trucking industry and to promote "maximum reliance on competitive market forces." 49 U.S.C. § 40101(a)(6). The preemption clause undoubtedly applies, for example, to state laws directly restricting types of goods that can be carried by trucks, tariffs, and barriers to entry. But state law may also be preempted if it has an indirect effect. This intent is patent in the FAAAA insofar as the preemption clause employs the phrase "related to" immediately before "a price, route, or service of any motor carrier." Id. § 14501(c)(1). The Supreme Court further observed that "state laws whose 'effect' is 'forbidden' under federal law are those with a 'significant impact' on carrier

15

rates, routes, or services." Rowe, 552 U.S. at 375 (quoting Morales, 504 U.S. at 388).

We cannot say, particularly at this procedural juncture, that the IWPCA has a significant impact on carrier rates, routes, or services of a motor carrier or that it frustrates the FAAAA's deregulatory objectives. Joseph Cory argues otherwise, contending the impact of the IWPCA is substantial, and complains that if this lawsuit is successful, it will permit the Drivers to "re-write" their independent contractor agreements with Joseph Cory. Joseph Cory Br. 13.[10] It

<hr />

[10] Joseph Cory relies heavily upon Wolens, but that decision is inapposite to this case. Wolens involved the state consumer fraud and breach of contract claims of consumers who participated in American Airlines' frequent flyer program following retroactive changes to the program's terms and conditions. The Court determined that both categories of the customers' claims related to "rates" and "services." 513 U.S. at 226. But the Court held that although the ADA preempted the state consumer fraud claims, it did not preempt the breach of contract claims. Id. at 228–29. The Court noted that the relevant "distinction [was] between what the State dictates and what the airline itself undertakes . . . with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233. Joseph Cory seizes upon a sentence from the Brief of the United States in Wolens that "[t]he stability and efficiency of the market depend fundamentally on the enforcement of agreements freely made, based on the needs perceived by the contracting parties." Id. at 230 (quoting Brief of United States as Amicus Curiae 23). We agree with this unremarkable statement on contract law. But the present case does not involve a breach of contract claim. Moreover, the

16

contends that adjusting the compensation arrangements with their drivers would be disruptive to its business and choice of business model and contravene the deregulatory objectives of the preemption clause. For instance, Joseph Cory asserts the IWPCA claims will impact its "services" regarding transportation of property. Joseph Cory Br. 22.

Wage laws like the IWPCA are a prime example of an area of traditional state regulation, and we do not lightly conclude that such laws are superseded. Moreover, such laws are a part of the backdrop that motor carriers and all business owners must face in conducting their affairs. The IWPCA does not single out trucking firms, and it only concerns the relationship between employers and employees. While the fact that the IWPCA does not regulate affairs between employers

Court in Wolens was careful to frame its preemption discussion on breach of contract claims "alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id. at 228 (emphasis added). Accordingly, the Court in Wolens was not called upon to address a circumstance, as we are in this case, in which a state law imposed an obligation on employers unrelated to the provision of services or the relationship between a service provider and its customers. We note parenthetically that the Supplemental Appendix in this case contains the Brief of the United States as Amicus Curiae in a factually identical case discussed infra, and that brief states that "the FAAAA does not preempt [the drivers'] claim that [the motor vehicle carrier] violated the IWPCA's wage-deduction regulation . . . under the 'significant impact' formulation used in assessing the laws at issue in Rowe, 552 U.S. at 375, and Morales, 504 U.S. at 309." Supplemental Appendix 16–17.

17

and customers is not dispositive, it does demonstrate that the operation of the IWPCA is steps away from the type of regulation the FAAAA's preemption clause sought to prohibit. We have no doubt that the disruption of a labor model — especially after services have been performed — could have negative financial and other consequences for an employer.[11] A similar effect could also be experienced by a change in zoning regulations, and the Supreme Court has concluded that such regulations are not preempted. See Dan's City Used Cars, 569 U.S. at 264. We reiterate that the phrase "related to" does have bounds, and we believe that the IWPCA falls outside those bounds. See id. at 260 ("[T]he breadth of the words 'related to' does not mean that the sky is the limit."). Put another way, the IWPCA claims here are too far removed from the statute's purpose to warrant preemption. With no record to demonstrate otherwise, we hold that the impact of the IWPCA is too tenuous, remote, and peripheral to fall within the scope of the FAAAA preemption clause.

We are persuaded by the decisions of two of our sister Courts of Appeals. The Court of Appeals for the Seventh Circuit considered nearly identical facts in Costello v. BeavEx, Inc. and concluded, on a summary judgment record, that the FAAAA did not preempt the IWPCA. 810 F.3d 1045, 1048 (7th Cir. 2016). As in this case, the BeavEx plaintiffs only sought remedy for violation of the IWPCA wage deduction

---

[11] We note that this case is limited to the issue of wage deductions from agreed-upon compensation. The other benefits of the independent contractor model — for example, avoiding costs associated with owning and maintaining equipment or allowing drivers to choose their own routes and hours — remain available to Joseph Cory.

18

provision. Id. at 1055. The court determined that, considering the limited scope of the IWPCA, its effect is similarly limited and, rather than "hav[ing] a significant impact on the prices, routes, and services that BeavEx offers to its customers," id., "the impact of the IWPCA is too 'tenuous, remote, or peripheral' to warrant FAAAA preemption," id. BeavEx argued that, if the IWPCA were not preempted, it would suffer increased labor costs, and that would result in higher prices for its customers and would force it to change its business model. Id. at 1056. In fact, BeavEx produced evidence that they would have to spend, for instance, an additional $185,000 per year to employ a human resources professional. Id. The court was not persuaded, determining that "the IWPCA regulates the motor carrier as an employer, and any indirect effect on prices is too tenuous, remote, or peripheral." Id. at 1055; see also id. at 1056 ("We do not see . . . how the increased labor cost will have a significant impact on the prices that BeavEx offers to its customers. BeavEx has offered no evidence to persuade us otherwise.").[12] The court held that denial of summary

<hr>

[12] The BeavEx court noted the IWPCA's provision allowing an employer and employee to "contract around" the wage deduction prohibition through the "express written consent of the employee, given freely at the time the deduction is made." 810 F.3d at 1057 (quoting 820 Ill. Comp. Stat. 111/9). The court found this significant insofar as the Supreme Court in Nw., Inc. held that state law was not preempted if the law "permits an airline to contract around those rules." 134 S. Ct. at 1433. Joseph Cory asserts that Nw., Inc. is inapplicable because the IWPCA "permits written consent to comply with the IWPCA" rather than permitting parties to contract around its requirement. Joseph Cory Reply Br. 14. We disagree with this characterization of the IWPCA and agree with the BeavEx

judgment was appropriate and concluded that "BeavEx has not demonstrated to this court that preventing it from deducting from its couriers' wages or the transaction costs associated with acquiring consent to do so would have a significant impact related to its prices, routes, or services." Id. at 1057.

The Court of Appeals for the Ninth Circuit in Dilts v. Penske Logistics, LLC, also considered the scope of the FAAAA's preemption clause. 769 F.3d 637 (9th Cir. 2014). The truck drivers in that case asserted claims under California's meal and rest break statutes against their employer. The court began its analysis of the employer's motion for summary judgment by recognizing that "[w]age and hour laws constitute areas of traditional state regulation" and, therefore, the presumption against preemption of state law applied. Id. at 643–44. Applying the standards necessary to resolve an FAAAA preemption issue, the court noted that "generally applicable background regulations . . . such as prevailing wage laws or safety regulations[] are not preempted, even if employers must factor those provisions into their decisions about the prices they set, the routes that they use, or the services that they provide." Id. at 646. Indeed, the employer produced evidence that compliance with the meal and rest break laws at issue would mean the employer would have to raise prices about 3.4% per year. Id. at 651 (Zouhary, J., concurring). The court reversed the district court's grant of summary judgment and held that the FAAAA preemption clause did not preempt the California law, reasoning that the

court. Indeed, the Supreme Court focused upon whether state law "authorize[d] parties to free themselves from [a requirement]" to determine avoid preemption. Nw., Inc., 134 S. Ct. at 1432.

20

state law was not sufficiently "related to" motor carrier prices, routes, or services.  Id. at 650 (majority opinion).

Joseph Cory urges that we should follow two cases from the Court of Appeals for the First Circuit, in which that court held state laws to be preempted by the ADA and FAAAA. Both cases are distinguishable because they involved state laws of a wholly different character than the IWPCA.  The first of those cases, DiFiore v. American Airlines, Inc., involved a direct regulation, not an indirect one like the IWPCA.  646 F.3d 81, 88 (1st Cir. 2011).  DiFiore involved a Massachusetts law regulating tipping as applied to Logan Airport skycaps.  The court held that the statute was preempted by the ADA because it "directly regulate[d] how an airline service is performed and how its price is displayed to customers—not merely how the airline behaves as an employer or proprietor," and reversed a jury verdict in favor of the plaintiffs.  Id. at 88.  The opinion expressly distinguished the regulation in that case from one like the IWPCA, noting that "the Supreme Court would be unlikely—with some possible qualifications—to free airlines . . . from prevailing wage laws[] and ordinary taxes applicable to other businesses," even though "such measures . . . may affect fares and services."  Id. at 87.

In the second of those cases, Schwann v. FedEx Ground Package Systems, the plaintiffs alleged that FedEx mischaracterized them as independent contractors when it should have treated them as employees, and that this mischaracterization violated the Massachusetts Independent Contractor Statute (the "MICS").  813 F.3d 429, 432–33 (1st Cir. 2016).  The court, considering the parties' cross motions for summary judgment, held that the FAAAA preempted the MICS, basing its holding on the broad sweep of the MICS's

regulation. The opinion noted that the MICS provided for a comprehensive regulatory scheme that would, "in substance, bar FedEx from using any individuals as full-fledged independent contractors." Id. at 437. Unlike in the Drivers' case, in which the IWPCA regulates only limited aspects of the manner in which employees — as defined by that statute — are paid agreed-upon compensation, the MICS provided for a comprehensive regulatory regime, which the court held would result in "interference" with FedEx's prices, routes, rates, and services. Id. at 438. The interference, the court determined, was not "peripheral" and it "sufficiently" related to FedEx's routes and service, thereby justifying preemption. Id.; cf. Rowe, 552 U.S. at 375 ("[S]tate laws whose 'effect' is 'forbidden' under federal law are those with a 'significant impact' on carrier rates, routes, or services." (quoting Morales, 564 U.S. at 388)). The Drivers' case is different from Schwann because the Drivers' complaint does not show, on its face, that the IWPCA is so far-reaching as to meaningfully affect Joseph Cory's prices, routes, rates, or services. See BeavEx, 810 F.3d at 1055 ("Importantly, the [MICS] triggers far more employment laws than the employment definition contained in the IWPCA."). The IWPCA's limited regulation of ministerial aspects of the manner in which employees are paid is different in kind from the MICS's unique, sweeping regulation of independent contractors in Massachusetts.[13]

In closing, we restate the procedural posture of this case, as it is significant. Joseph Cory moved to dismiss under Rule

---

[13] Furthermore, unlike the wage-deduction provision of the IWPCA, the Massachusetts law "bar[red] the employer from excepting itself . . . by contract." Schwann, 813 F.3d at 433; see supra, note 12.

12(b)(6), and it was required to prove the preemption affirmative defense based on the face of the Drivers' complaint. We note that the BeavEx, Dilts, and Schwann cases all were decided in the context of a summary judgment record and DiFiore with a trial record. The allegations of the complaint and arguments of Joseph Cory do not persuade us that the District Court erred in denying the motion to dismiss. We conclude that the IWPCA does not have a significant impact on carrier rates, routes, or services of a motor carrier and does not frustrate the FAAAA's deregulatory objectives, as the impact of the IWPCA is too tenuous, remote, and peripheral to fall within the scope of the FAAAA preemption clause.

## III.

For the foregoing reasons, we will affirm the Order of the District Court.