**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1641
_____

EVER BEDOYA; DIEGO GONZALES; MANUEL
DECASTRO,
on behalf of themselves and all others similarly situated

v.

AMERICAN EAGLE EXPRESS INC, d/b/a AEX GROUP

v.

KV SERVICE, LLC; M&J EXPRESS, LLC; A&D
DELIVERY EXPRESS, LLC

American Eagle Express, Inc.,
Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-02811)
District Judge: Hon. Esther Salas
_____

Argued November 14, 2018

_____

Before: GREENAWAY, JR., SHWARTZ, and BIBAS,
Circuit Judges.

(Opinion Filed: January 29, 2019)

Harold L. Lichten          [ARGUED]
Lichten & Liss-Riordan
729 Boylston Street
Suite 2000
Boston, MA 02116

R. Andrew Santillo
Peter D. Winebrake
Winebrake & Santillo
715 Twinning Road
Suite 211, Twinning Office Center
Dresher, PA 19025

        _Counsel for Plaintiff-Appellees_

Joseph C. DeBlasio          [ARGUED]
Jackson Lewis
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960

        _Counsel for Defendant-Appellant_

Adina H. Rosenbaum
Public Citizen Litigation Group

1600 20th Street, NW.
Washington, DC 20009

   *Counsel for Amicus Public Citizen Inc.*


Christopher W. Weber       [ARGUED]
Emily M. Bisnauth
Office of Attorney General of New Jersey
Department of Law & Public Safety
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

   *Counsel for Amicus New Jersey Department of Labor
   and Workforce Development*

_____

OPINION

_____


SHWARTZ, <u>Circuit Judge</u>.

   Plaintiff delivery drivers Ever Bedoya, Diego Gonzalez, and Manuel Decastro (collectively, "the Drivers") filed a putative class action against Defendant American Eagle Express, Inc., ("AEX"), alleging that AEX misclassified them as independent contractors when they are actually employees under the New Jersey Wage and Hour Law ("NJWHL"), N.J.

Stat. Ann. §§ 34:11-56a to -56a3, and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. §§ 34:11-4.1 to -4:14. AEX moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that the Drivers' claims are preempted by the Federal Aviation Authorization Administration Act of 1994 ("FAAAA"), 49 U.S.C. §§ 14501-06. The District Court denied AEX's motion and certified the order for interlocutory appeal. Because the FAAAA does not preempt the New Jersey law for determining employment status for the purposes of NJWHL and NJWPL, we will affirm the order and remand for further proceedings.

I

AEX is a logistics company that provides delivery services to various medical organizations. The Drivers are New Jersey residents who make deliveries for AEX. The Drivers filed this putative class action against AEX seeking, among other things, a judgment declaring that they are employees of AEX, rather than independent contractors, which entitles them to compensation under the NJWHL and NJWPL.[1] AEX moved for judgment on the pleadings, arguing that the FAAAA preempts the Drivers' claims.

The District Court denied AEX's motion, Bedoya v. Am. Eagle Express, Civ. No. 14-2811, 2017 WL 4330351, at *1 (D.N.J. Sept. 29, 2017), reasoning that "[t]here is no clear indication" that Congress intended for the FAAAA to preempt state wage laws, Dkt. 109 at 6, 10, and that the connection between regulation of AEX's workforce and the "prices,

_____

[1] The District Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

4

routes, and services" provided to its consumers is too attenuated to justify preempting claims under the NJWHL and NJWPL, id. at 8-9. We now consider AEX's interlocutory appeal of the order denying the motion pursuant to 28 U.S.C. § 1292(b). Bedoya, 2017 WL 4330351, at *1-4.

## II[2]

### A

The question before us is whether the FAAAA preempts New Jersey's test for determining employment classification for purposes of the NJWHL and NJWPL. Under this test, workers performing services for a given company in exchange for pay are deemed employees unless the company can demonstrate each of the following:

> A. Such individual has been and will continue to be free from control or direction over the

---

[2] We review an order granting or denying a motion for judgment on the pleadings de novo. Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (citing Allah v. Al-Hafeez, 226 F.3d 247, 249 (3d Cir. 2007)). Judgment will not be granted unless the movant "clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (citation omitted). In considering a motion for judgment on the pleadings, we must accept as true all facts presented in the complaint and answer and draw all reasonable inferences in favor of the non-moving party—here, the Drivers. Id. at 417-18. While AEX implores us to look beyond the pleadings, we may not.

5

performance of such service, both under his contract of service and in fact; and

    B.  Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

    C.  Such individual is customarily engaged in an independently established trade, occupation, profession, or business.

N.J. Stat. Ann. §§ 43:21-19(i)(6)(A)-(C) ("New Jersey ABC classification test"). Where a company successfully demonstrates all three elements with respect to a worker, that worker qualifies as an independent contractor under the NJWHL and NJWPL. Hargrove v. Sleepy's, LLC, 106 A.3d 449, 458 (N.J. 2015). The company, in turn, is exempt from requirements under those statutes with respect to the worker. Id. For individuals classified as employees, however, the employing company is subject to each statute's obligations, including minimum and overtime wage requirements, N.J. Stat. Ann. § 34:11-56a4, conditions regarding the time and mode of pay, N.J. Stat. Ann. § 34:11-4.2, 4.2a, and restrictions on pay deductions, N.J. Stat. Ann. § 34:11-4.4. AEX contends that the New Jersey ABC classification test is preempted by the FAAAA.

B

The preemption doctrine stems from the Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "Congress . . . has the power to preempt state law." In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 83 (3d Cir. 2017) (citing Arizona v. United States, 567 U.S. 387 (2012)), cert denied sub nom., Alban v. Nippon Yusen Kabushiki Kaisha, 138 S. Ct. 114 (2017). There are three categories of preemption: field preemption, conflict preemption, and express preemption. Holk v. Snapple Beverage Corp., 575 F.3d 329, 334 (3d Cir. 2009) (citing Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985)).

Because preemption is an affirmative defense, we examine the specific preemption defense asserted. In re Vehicle, 846 F.3d at 84 (citing Oneok, Inc. v. Learjet, Inc., 135 S. Ct. 1591 (2015)). AEX argues that New Jersey's ABC classification test is subject to express preemption under 49 U.S.C. § 14501(c)(1). "Express preemption requires a[n] analysis of whether '[s]tate action may be foreclosed by express language in a congressional enactment.'" Lupian v. Joseph Cory Holdings, LLC, 905 F.3d 127, 131 (3d Cir. 2018) (alteration in original) (quoting Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001)).

In evaluating AEX's argument, we first decide whether the presumption against preemption applies. City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 438 (2002) (applying the presumption against preemption in the

7

FAAAA context).  Under this presumption, "the historic police powers of the States" are "not to be superseded by [a] [f]ederal [a]ct unless that was the clear and manifest purpose of Congress."  Sikkelee v. Precision Airmotive Corp., 822 F.3d 680, 687 (3d Cir. 2016) (quoting Wyeth v. Levine, 555 U.S. 555, 565 (2009)).  Thus, we "presume claims based on laws embodying state police powers are not preempted."  In re Vehicle, 846 F.3d at 84; see also Farina v. Nokia Inc., 625 F.3d 97, 116 (3d Cir. 2010).

Many employment regulations, such as the wage laws at issue here, seek to ensure workers receive fair pay.  Because they protect workers, they are within New Jersey's police power, and the presumption against preemption by federal law applies.  See, e.g., Lupian, 905 F.3d at 131 (stating wage laws that protect workers represent an exercise of "police power"); see also Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987) (applying the presumption against preemption to a state labor law regarding severance pay "since the establishment of labor standards falls within the traditional police power of the State").

The presumption is rebutted where Congress had a "clear and manifest purpose" to preempt state laws.  Sikkelee, 822 F.3d at 687 (citation omitted); see also Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (directing courts to examine congressional intent, the "ultimate touchstone" in discerning the preemptive scope of a statute (internal quotation marks and citation omitted)).   To determine Congress' purpose, we look to the plain language of the statute and, if necessary, to the statutory framework as a whole.  Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996) (citation omitted).  Thus, we next examine Congress' purpose in enacting the

FAAAA and the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. §§ 40101-130, an earlier statute with a similar preemption provision.

C

In 1978, following a long period of heightened regulation, Congress enacted the ADA, which sought to deregulate the air-travel industry to "maxim[ize] reliance on competitive market forces." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992) (quoting 49 U.S.C. App. § 1302(a)(4)). To ensure that this objective would not be frustrated by state regulation, Congress included a preemption provision providing that "no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier." Id. at 420 (Stevens, J., dissenting) (quoting 49 U.S.C. App. § 1305(a)).

Congress enacted similar laws focused on deregulating interstate trucking, culminating with the passage of the FAAAA in 1994. Lupian, 905 F.3d at 132-33. Via the FAAAA, Congress sought to "level the playing field" between air carriers and motor carriers so that both could benefit from federal deregulation. H.R. Conf. Rep. No. 103-677, at 88 (1994); see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1187-88 (9th Cir. 1998) (detailing FAAAA legislative history). The FAAAA contains a preemption provision modeled after the ADA's, providing, with limited exceptions, that:

> a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or

9

service of any motor carrier . . . with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Because of the parallels between the ADA and FAAAA, ADA cases are instructive regarding the scope of FAAAA preemption. See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008) (analyzing FAAAA preemption using ADA cases as guidance). As with the ADA, the FAAAA preemption provision's central objective is to avoid frustrating the statute's deregulatory purpose by preventing states from imposing "a patchwork of state service-determining laws." Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 264 (2013) (quoting Rowe, 552 U.S. at 373). The FAAAA, however, has a qualifier that is absent from the ADA: the preempted state law must relate to prices, routes, or services "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has recognized that this language "massively limits the scope of preemption ordered by the FAAAA." Dan's City, 569 U.S. at 261 (internal citation and quotation marks omitted).

Further insight into the limits of FAAAA preemption comes from the subjects Congress considered when enacting that statute. "Congress identified ten jurisdictions (nine states and the District of Columbia . . . ) that did not regulate intrastate prices, routes, and services." Cal. Trucking Ass'n v. Su, 903 F.3d 953, 967 (9th Cir. 2018) (citing Mendonca, 152 F.3d at 1187). By implication, Congress determined that the laws then in existence in those jurisdictions did not contravene its deregulatory goals and thus were not preempted. Id.

The Supreme Court has also articulated several principles that inform us about the breadth of FAAAA

10

preemption. First, the "related to" language from the FAAAA preemption clause gives it a broad scope, encompassing any state actions that have "a connection with, or [make] reference to . . . rates, routes, or services" of a motor carrier. Nw., Inc. v. Ginsberg, 572 U.S. 273, 280-81 (2014) (internal quotation marks and citation omitted) (interpreting the ADA). While this language covers any state law that has a connection with or refers to "price[s], route[s], [or] service[s,]" id. at 280, "the breadth of the words 'related to' does not mean the sky is the limit," Dan's City, 569 U.S. at 260. Drawing from case law examining similar wording in the preemption provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), see, e.g., Morales, 504 U.S. at 383-84, the Supreme Court has observed that reading the phrase "related to" with "uncritical literalism" would render preemption an endless exercise, Dan's City, 569 U.S. at 260-61 (citation omitted), because "everything [is] relat[ed] to everything else in some manner[,]" Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429, 436 (1st Cir. 2016) (citing N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1955)).

Second, FAAAA preemption reaches laws that affect prices, routes, or services even if the effect "is only indirect." Rowe, 552 U.S. at 370 (quoting Morales, 504 U.S. at 386). However, where a law's impact on carrier prices, routes, or services is so indirect that the law affects them "in only a tenuous, remote, or peripheral . . . manner," the law is not preempted. Dan's City, 569 U.S. at 261 (quoting Rowe, 552 U.S. at 371); Morales, 504 U.S. at 390 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)).

11

Finally, preemption occurs where a state law has "a 'significant impact' on carrier rates, routes, or services."[3] Rowe, 552 U.S. at 375 (emphasis omitted) (quoting Morales, 504 U.S. at 390).

Mindful of these principles, we next review the case law for guidance concerning whether a law has a direct or indirect effect and whether it has a significant or insignificant effect. From our review, we identify factors courts examine and set forth those factors that may shed light on a law's directness and those that may reflect the significance of the law's effect on the regulated entities at issue.

D

Neither the Supreme Court nor our Court has recited precise standards for evaluating directness or significance, but cases addressing the issue provide some guidance. For example, the Supreme Court has held that consumer protection and fraud laws used to regulate frequent-flyer programs could directly and significantly affect prices and services and are thus preempted. See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 223 (1995); Morales, 504 U.S. at 388-89. Similarly, the Court determined that a Maine law requiring a specific procedure to verify the recipient of tobacco deliveries was preempted by the FAAAA because it dictated a service that tobacco motor carriers were required to provide for property they transported. Rowe, 552 U.S. at 372. In addition, we recently observed that

---

[3] The Supreme Court also noted that "it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation." Rowe, 552 U.S. at 370 (quoting Morales, 504 U.S. at 386-87).

12

the FAAAA's "preemption clause undoubtedly applies, for example, to state laws directly restricting types of goods that can be carried by trucks, tariffs, and barriers to entry." Lupian, 905 F.3d at 135; H.R. Conf. Rep. No. 103-677, at 86 (1994).

On the other hand, the FAAAA itself, the Supreme Court, and the courts of appeals have identified laws that are too "tenuous, remote, or peripheral" from carrier prices, routes, and services to trigger preemption. See, e.g., Rowe, 552 U.S. at 371; Dilts v. Penske Logistics, LLC, 769 F.3d 637, 646 (9th Cir. 2014). The FAAAA explicitly exempts from preemption laws governing motor vehicle safety, local route controls based on vehicle size and weight, and driver insurance requirements.[4] 49 U.S.C. § 14501(c)(2)(A). The Supreme Court has stated that the FAAAA does not preempt laws prohibiting prostitution, gambling, and "obscene depictions," Morales, 504 U.S. at 390, or those addressing zoning, Dan's City, 569 U.S. at 264. We have observed that "garden variety employment claim[s]" evade ADA and FAAAA preemption because they are "too remote and too attenuated" from carrier prices, services, or routes. Lupian, 905 F.3d at 134 (quoting Gary v. Air Grp., Inc., 397 F.3d 183, 189 (3d Cir. 2005)). As relevant to this case, we recently held that wage claims under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1-115/15, are not preempted under the FAAAA because they are "too far removed from the statute's

---

[4] The House of Representatives Conference Report specifies that the list provided in 49 U.S.C. § 14501(c)(2) and (3) is "not intended to be all inclusive, but merely to specify some of the matters which are not 'prices, rates or services' and which are therefore not preempted." H.R. Conf. Rep. No. 103-677, at 83.

purpose to warrant preemption." Lupian, 905 F.3d at 136. Many of our sister circuits have similarly held that the FAAAA and ADA do not preempt state employment laws. See, e.g., Allied Concrete & Supply Co. v. Baker, 904 F.3d 1053, 1068 (9th Cir. 2018) (holding California prevailing wage law for workers on public projects not preempted); Su, 903 F.3d at 957 (holding California common law test for employee versus independent contractor status not preempted); Costello v. BeavEx, Inc., 810 F.3d 1045, 1048 (7th Cir. 2016) (holding Illinois wage law not preempted), cert. denied, 137 S. Ct. 2289 (2017); Amerijet Int'l, Inc. v. Miami-Dade County, Fla., 627 F. App'x 744, 751 (11th Cir. 2015) (holding Miami-Dade County living wage ordinance as applied to air carriers not preempted); Dilts, 769 F.3d at 647 (holding California meal and rest-break laws not preempted); Mendonca, 152 F.3d at 1189 (holding California wage law not preempted).

From the language of the FAAAA preemption provision and these cases, we can distill several factors courts should consider when deciding whether a particular state law is FAAAA-preempted. First, courts should examine whether the state law at issue applies to all businesses or whether it focuses on motor carriers. Laws that are directed at "members of the general public" and that are not targeted at motor carriers are usually viewed as not having a direct effect on motor carriers. Rowe, 552 U.S. at 375.

Even targeted laws, however, are not necessarily preempted. We know from the FAAAA itself that state laws that may target motor carrier safety and insurance, or restrict local routes based on vehicle size and weight, are not preempted. 49 U.S.C. § 14501(c)(2). Conversely, laws of general applicability may nonetheless be preempted where

14

they have a significant impact on the services a carrier provides.  See, e.g., DiFiore v. Am. Airlines Inc., 646 F.3d 81, 88-89 (1st Cir. 2011) (holding generally applicable state tip law as applied to airlines preempted under the ADA because it "directly regulate[d] how an airline service is performed and how its price is displayed to customers").  Thus, whether a law is applicable to every business or targets carriers is a helpful but nondispositive factor for determining whether a law has a direct effect on motor carriers' prices, routes, or services.  Morales, 504 U.S. at 386.

Second, courts should consider whether the law addresses the carrier-employee relationship as opposed to the carrier-customer relationship.  "[G]enerally applicable state laws that affect the carrier's relationship with its customers [differ from] those that affect the carrier's relationship with its workforce."  Costello, 810 F.3d at 1054; see also Su, 903 F.3d at 961-63 (noting same dichotomy); DiFiore, 646 F.3d at 88 (preempting a Massachusetts law prohibiting employer from collecting fee advertised as "service charge" because the law regulates how a company performs services for its customers and "not merely how the airline behaves as an employer or proprietor").

The Court of Appeals for the Seventh Circuit provides a useful analysis explaining why laws governing an employer's relationship with its employees have too remote an impact to be preempted.  S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc., 697 F.3d 544, 558 (7th Cir. 2012) (citing Mendonca, 152 F.3d at 1189).  The court examines whether the challenged state law regulates matters needed to operate the business, which it calls resource inputs, as opposed to laws governing the goods or services the business puts out, which it calls

15

product outputs.  Id.  The product outputs of the motor carrier industry are the services it provides—transportation of property from origin to destination.  Id.  The FAAAA's focus on prices, routes, and services shows that the statute is concerned with the industry's production outputs, and seeks to protect them from state regulation.

Resource inputs, on the other hand, are the resources necessary for a business to create product outputs, including "labor, capital, and technology," which may be regulated by various laws.  Id.  "For example, labor inputs are affected by a network of labor laws, including minimum wage laws, worker-safety laws, anti-discrimination laws, and pension regulations. Capital is regulated by banking laws, securities rules, and tax laws, among others.  Technology is heavily influenced by intellectual property laws."  Id.  Although laws that regulate inputs may impact costs and may in turn affect prices charged and services provided to customers, "no one thinks that the ADA or the FAAAA preempts these [regulations] and the many comparable state laws[.]"  Id.  That is because, notwithstanding the state laws' indirect effects, they "operate one or more steps away from the moment at which the firm offers its customer[s] a service for a particular price" and therefore have too "remote" an effect on prices, routes, and services to be the intended target of preemption.  Id. (internal citations omitted); see also Su, 903 F.3d at 966 (stating that courts should examine "where in the chain of a motor carrier's business [the state law] is acting to compel a certain result (e.g., consumer or work force), and what result it is compelling (e.g., certain wage, non-discrimination, a specific system of delivery, a specific person to perform the delivery)"); Costello, 810 F.3d at 1055 (embracing S.C. Johnson, 697 F.3d at 558). In short, laws regulating labor inputs, such as wage laws, have

too remote an effect on the price the company charges, the routes it uses, and service outputs it provides and are less likely to be preempted by the FAAAA.

Third, courts should consider whether the law binds the carrier to provide a particular price, route, or service. As discussed above, the Supreme Court held that Maine's identification requirements for tobacco deliveries required a motor carrier transporting tobacco to provide a particular service. Rowe, 552 U.S. at 372. Similarly, the Court of Appeals for the First Circuit determined that Massachusetts' ABC test for classifying employees in effect bound the carrier to provide its services using employees rather than independent contractors. Schwann, 813 F.3d at 437. Under Massachusetts' independent contractor statute, only workers who perform a service that is outside the employer's usual course of business may be classified as independent contractors. Id. (quoting Mass. Gen. Laws ch. 149, § 148B(a)(2)). Thus, application of Massachusetts' test "in substance, bar[red] [the carrier at issue] from using any individuals as full-fledged independent contractors." Id. In other words, the Massachusetts test essentially foreclosed the independent contractor classification of any of the carrier's workers performing delivery services because such services were within the carrier's usual course of business. Id. As a result, the Massachusetts statute bound the carrier to provide its services using employees and not independent contractors.

The same was not true with laws that do not dictate a price, route, or service. For example, the Court of Appeals for the Ninth Circuit analyzed whether the FAAAA preempted a California law that requires employers to provide meal and rest breaks, reviewing, among other factors, whether the law bound

17

the carrier to specific prices, routes, or services. Dilts, 769 F.3d at 649-50. The court held that the FAAAA did not preempt California's meal and rest-break laws. Id. The court relied partially on the fact that the California laws did not "set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly." Id. at 647. Put simply, the law at issue did "not 'bind' motor carriers to specific prices, routes, or services."[5] Id. (citation omitted).

Finally, courts examining a preemption challenge to a state law should be mindful of Congress' goal of avoiding a "patchwork" of differing state "service-determining laws," which could undermine its "major legislative effort to leave [decisions regarding the provision of services] to the competitive marketplace." Rowe, 552 U.S. at 373 (citing H.R. Conf. Rep. No. 103-677, at 87 (1994)). This goal does not constitute a categorical imperative to free motor carriers of all state regulation. Rather, the plain language of the FAAAA, and its preemption of only laws "relat[ing] to" carrier "price[s], route[s], or service[s]," 49 U.S.C. § 14501(c)(1), demonstrates that Congress was concerned only with a limited set of state

---

[5] AEX characterizes Dilts as impermissibly relying on this "binds to" test to conclude that the FAAAA did not preempt California's meal and rest break laws, arguing that such a test construes the scope of FAAAA preemption too narrowly. While relying solely on such a "binds to" test may narrow FAAAA preemption to an unacceptable degree, Dilts merely recognized that the "binds to" test provides one of several possible avenues to demonstrate that a state law has a significant effect on carrier prices, routes, or services. Dilts, 769 F.3d at 649.

laws.  Dilts, 769 F.3d at 646-47.  Thus, "[t]he fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption."  Id. at 647.  Laws that are "more or less nationally uniform," Chambers v. RDI Logistics, Inc., 65 N.E.3d 1, 11-12 (Mass. 2016), are less likely to pose the kind of state law interference FAAAA preemption seeks to avoid.

In sum, to assess the directness of a law's effect on prices, routes, or services, courts should examine whether the law: (1) mentions a carrier's prices, routes, or services; (2) specifically targets carriers as opposed to all businesses; and (3) addresses the carrier-customer relationship rather than non-customer-carrier relationships (e.g., carrier-employee).  If a law has a direct impact on carriers' prices, routes, or services with respect to the transportation of property, then it is preempted unless it falls within one of the statutory exceptions.  Though we can draw no firm line between laws whose effects on rates, routes, or services are indirect and laws whose effects are "tenuous, remote, or peripheral," these factors, and perhaps other considerations, will guide courts in the inquiry.

To assess whether a law has a significant effect on a carrier's prices, routes, or services, courts should consider whether: (1) the law binds a carrier to provide or not provide a particular price, route, or service; (2) the carrier has various avenues to comply with the law; (3) the law creates a patchwork of regulation that erects barriers to entry, imposes tariffs, or restricts the goods a carrier is permitted to transport; and (4) the law existed in one of the jurisdictions Congress determined lacked laws that regulate intrastate prices, routes, or services and thus, by implication, is a law Congress found not to interfere with the FAAAA's deregulatory goal.  Other factors may also lead a court to decide that a state law has a

19

significant effect where the law undermines Congress' goal of having competitive market forces dictate prices, routes, or services of motor carriers.[6]

E

We have examined each of these considerations and conclude that New Jersey's ABC classification test is not preempted as it has neither a direct, nor an indirect, nor a significant effect on carrier prices, routes, or services.

---

[6] Before the Supreme Court's rulings in Rowe and Dan's City, our Court once framed the inquiry—albeit in the context of whether a defamation claim was preempted under the ADA (a question we answered in the negative, holding that the defamation claim was not preempted)—as whether the law or claim in question would "frustrate[] deregulation by interfering with competition through public utility-style regulation." Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 194 (3d Cir. 1998) (citation omitted). Elaborating on regulation in a "public utility sense" in the context of airline services, our Court said that regulations of "the frequency and scheduling of transportation" and "the selection of markets" are public-utility styled regulations (which would thus be preempted under the ADA), whereas "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities" are not services in a "public utility sense," and thus could be regulated, for instance through state implementation of a duty to exercise reasonable care, the violation of which could give rise to ordinary tort claims. Id. at 193 (quoting Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1261, 1265-66 (9th Cir. 1998) (en banc)).

Any effect New Jersey's ABC classification test has on prices, routes, or services is tenuous. The test does not mention carrier prices, routes, or services, nor does it single out carriers. Indeed, the test applies to all businesses as part of the "backdrop" they "face in conducting their affairs." Lupian, 905 F.3d at 136; see also Dilts, 769 F.3d at 646 (describing a state employment law as a "background regulation[]"). The test also does not regulate carrier-customer interactions or other product outputs. Rather, it only concerns employer-worker relationships. Laws governing how an employer pays its workers do not "directly regulate[] how [a carrier's] service is performed[;]" they merely dictate how a carrier "behaves as an employer[.]" DiFiore, 646 F.3d at 88. As a result, the test is "steps removed" from regulating customer-carrier interactions through prices, routes, or services. Costello, 810 F.3d 1054 (quoting Dilts, 769 F.3d at 646).

The New Jersey ABC classification test does not have a significant effect on prices, routes, or services either. The test does not bind AEX to a particular method of providing services and thus it is unlike the preempted Massachusetts law at issue in Schwann, 813 F.3d 429. The Massachusetts statute does not include New Jersey's alternative method for reaching independent contractor status—that is, by demonstrating that the worker provides services outside of the putative employer's "places of business." N.J. Stat. Ann. § 43:21-19(i)(6)(B). Thus, if the other prongs of the New Jersey classification test are met, the test allows an employer to classify a worker as an independent contractor if it shows that the worker either provides a service that is "outside the [employer's] usual course of business . . . or [performs such service] outside of all

21

the places of business of [the employer]." Id.[7]  No part of the New Jersey test categorically prevents carriers from using independent contractors.  As a result, the state law at issue here does not mandate a particular course of action—e.g., requiring carriers to use employees rather than independent contractors—and it offers carriers various options to comply with New Jersey employment law.[8]

---

[7] AEX focuses its argument on the B prong of the New Jersey test, but also asserts that the A and C prongs of the test are preempted.  AEX cites no case holding that prong A or C is preempted under either the FAAAA or the ADA.  This is not surprising given the legion of cases holding that the A and C prongs are not FAAAA-preempted.  See, e.g., Vargas v. Spirit Delivery & Distrib. Servs., Inc., 245 F. Supp. 3d 268, 281-84 (D. Mass. 2017); DaSilva v. Border Transfer of Mass., Inc., 227 F. Supp. 3d 154, 159-60 (D. Mass. 2017); Portillo v. Nat'l Freight, Inc., Civ. No. 15-7908, 2016 WL 5402215, at *5-6 (D.N.J. Sept. 26, 2016); Chambers v. RDI Logistics, Inc., 65 N.E.3d 1, 11-12 (Mass. 2016).  AEX also provides no reason why these prongs are preempted and in fact does not individually analyze them.  Thus, AEX has failed to carry its burden to demonstrate that the affirmative defense of FAAAA preemption applies to these prongs.

[8] AEX makes much of the fact that the Costello and Lupian courts observed that certain aspects of the IWPCA classification provision could be contracted around (i.e., employees could enter into contracts with carriers to allow certain paycheck deductions), Lupian, 905 F.3d at 135 n.12, whereas neither the New Jersey test nor the Massachusetts test allows the same contractual avoidance.  Contrary to AEX's argument, this does not make the current case more analogous

22

AEX argues that applying the New Jersey law may require it to shift its model away from using independent contractors, which will increase its costs, and in turn, its prices. Specifically, AEX asserts that if it can no longer use independent contractors to perform its delivery services, then it will be forced to recruit employees, bring on a human resources department to manage them, acquire and maintain a fleet of vehicles and pay expense reimbursements, provide fringe benefits, plan and dictate delivery routes and timing, and pay overtime wages and employment taxes. Our Court and our sister circuits have rejected similar lists of conclusory impacts. Lupian, 905 F.3d at 135-36; Costello, 810 F.3d at 1056; Mendonca, 152 F.3d at 1189. Though AEX correctly states that it need not proffer empirical evidence to support its assertions of significant impact at the pleading stage, see, e.g., Costello, 810 F.3d at 1055 (citing Rowe, 552 U.S. at 373-74),

to Schwann than to Costello and Lupian. Though Costello and Lupian correctly took the IWPCA contractual loophole into account, neither court relied on it. See Lupian, 905 F.3d at 136 n.12 (observing that the Costello court "noted" the contractual allowance in the IWPCA); Costello, 810 F.3d at 1057 (noting in a single sentence that the IWPCA's prohibition on deductions from wages can be contracted around, ultimately holding that the IWPCA is not "related to a price, route, or service of any motor carrier"). Moreover, while a contractual circumvention option may provide another route for compliance, weighing against FAAAA preemption, it is not the only way a state statute can afford carriers some flexibility. Here, the New Jersey ABC classification test gives carriers options; it does not need to provide a contractual workaround to avoid preemption.

23

it does not provide even a logical connection between the application of New Jersey's ABC classification test and the list of new costs it would purportedly incur.[9]

AEX's argument that it may be subject to other legal requirements arising from reclassification, citing only the Affordable Care Act,[10] is equally unavailing. In the words of the Costello court, "[c]onspicuously absent from [the company's] parade of horrors is any citation of authority showing that it would be required to comply with [other] federal and state laws." Id. at 1056. Instead, AEX "rel[ies] on conclusory allegations that compliance with the [NJWHL and NJWPL] will require [AEX] to switch its entire business model . . . [but w]e see no basis for concluding that [New Jersey law] would require that change given that the federal employment laws and other state labor laws [may] have different tests" for determining whether someone is an employee under a specific statute. Id. (citations omitted).

Furthermore, while "[w]e have no doubt that the disruption of a labor model—especially after services have been performed—could have negative financial and other consequences for an employer," Lupian, 905 F.3d at 136, this impact on the employer does not equate to a significant impact on Congress' goal of deregulation. Congress sought to ensure

---

[9] For instance, we cannot see, nor has AEX explained, how reclassification of employees would necessarily require AEX to acquire a new fleet of vehicles or create a human resources department.

[10] Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119 (2010).

24

market forces determined prices, routes, and services. Nothing in that goal, however, meant to exempt workers from receiving proper wages, even if the wage laws had an incidental impact on carrier prices, routes, or services.[11]

Finally, the fact that New Jersey's ABC classification test differs from the federal test used in the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-19, will not result in a "'patchwork' of unique state legislation, which [AEX contends] regulates differently from state to state how motor carriers are required to perform their delivery services." Reply Br. at 14. Most notably, New Jersey's test is similar to that used in many other states. See, e.g., RDI Logistics, 65 N.E.3d at 11-12 (holding that prongs A and C of the Massachusetts test, which are identical to those in the New Jersey test, were not FAAAA-preempted because they did not present a "patchwork problem" as they were "more or less nationally uniform," unlike the Massachusetts B prong, which was preempted in Schwann because it was anomalous (quoting Schwann, 813 F.3d at 440)).

---

[11] Indeed, Congress evinced its intent for the FAAAA not to preempt general state wage laws when it included New Jersey—where, at the time the FAAAA was enacted, the NJWHL and NJWPL were already in effect, N.J. Stat. Ann. §§ 34:11-56a7 & 34:11-4.1 (indicating initial enactment in 1966 and 1965, respectively)—in its list of jurisdictions with laws that did not run afoul of the FAAAA. H.R. Conf. Rep. No. 103-677, at 86 (1994); see also Mendonca, 152 F.3d at 1187-88 & n.3.

Thus, AEX has not shown that New Jersey's ABC classification test has a "significant impact" on Congress' deregulatory efforts with respect to motor carrier businesses, nor are the NJWHL and NJWPL—typical state wage and hour laws—the kinds of preexisting state regulations with which Congress was concerned when it passed the FAAAA.[12]  See Lupian, 905 F.3d at 135-36; Schwann, 813 F.3d at 438; Costello, 810 F.3d at 1050-51; Amerijet, 627 F. App'x at 751; Dilts, 769 F.3d at 647-48; Gary, 397 F.3d at 189-90; Mendonca, 152 F.3d at 1187-89.  Notably, eight of the ten jurisdictions that Congress identified as not regulating intrastate prices, routes, and services "had laws for differentiating between an employee and an independent contractor," Su, 903 F.3d at 967, and at least three codified ABC tests similar to that of New Jersey, see Alaska Stat. § 23.20.525(a)(10) (1992); Del. Code Ann. tit. 19, § 3302(9)(k) (1992); Vt. Stat. Ann. tit. 21, § 1301(6)(B) (1992).  Therefore, AEX's patchwork argument fails.

Accordingly, any effect the New Jersey ABC classification test has on prices, routes, or services with respect to the transportation of property is tenuous and insignificant. See Lupian, 905 F.3d at 136.  As a result, the test is not preempted.

---

[12] As the Schwann court observed, while Congress sought "to avoid 'a patchwork of state service-determining laws,'" we can assume that "Congress intended to leave untouched" "pre-existing and customary manifestation[s] of the state's police power."  813 F.3d at 438 (quoting Rowe, 552 U.S. at 373).

III

For the foregoing reasons, we will affirm the District Court's order denying AEX's motion for judgment on the pleadings and remand for further proceedings.