NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1287
_____

BERKLEY SPECIALTY INSURANCE COMPANY, f/k/a BERKLEY REGIONAL
SPECIALTY INSURANCE COMPANY

v.

MASTERFORCE CONSTRUCTION CORP.; JOHN P. BRANDT, O.D.; KAREN
BRANDT; WE DO METAL ROOFS; ROBERT DEHARDER; and KEITH R. WILTON

John P. Brandt, O.D. and Karen Brant,
Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-19-cv-01162)
District Court Judge: Honorable Matthew W. Brann
_____

Argued January 26, 2022
_____

Before: CHAGARES, *Chief Judge*, McKEE,[*] and MATEY, *Circuit Judges*

(Opinion filed: May 11, 2023)

Robert Englert **[ARGUED]**
Jessalyn L. Cool
RFE Law Firm, LLC
105 Rutgers Avenue
P.O. Box 249
Swarthmore, PA 19081

_____

[*] Judge McKee assumed senior status on October 21, 2022.

*Counsel for Appellants*

Phillip D. Berger **[ARGUED]**
Berger Law Group, P.C.
919 Conestoga Road
Building 3, Suite 114
Rosemont, PA 19010
    *Counsel for Appellee Masterforce Construction Corp.*

Anthony L. Miscioscia **[ARGUED]**
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103
    *Counsel for Appellee Berkley Specialty Insurance Co, f/k/a Berkley Regional Specialty Insurance*

_____

## OPINION**

_____

McKEE, *Circuit Judge*.

Masterforce Construction Corp. and John P. Brandt and Karen Brandt appeal an order denying the Brandts' motion for judgment on the pleadings and granting insurer Berkley Specialty Insurance Company's motion for judgment on the pleadings in this declaratory judgment action. The District Court determined that Berkley has no obligation to indemnify Masterforce with respect to an underlying state action that the

---

** This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

Brandts brought against Masterforce after a faulty roof panel installation. We will affirm.[1]

## I.

The parties dispute whether Berkley had a duty to indemnify Masterforce in the underlying state action. Resolution of that issue is governed by the contracts between Masterforce and Berkley. Masterforce's 2012 and 2013 Commercial General Liability (CGL) insurance policies with Berkley limit coverage to property damage "caused by an 'occurrence.'"[2] The policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[3] The parties disagree over whether the property damage that the Brandts sustained qualifies as an "occurrence." If it does, Berkley is obligated to indemnify Masterforce for the damages imposed in the underlying state lawsuit. The District Court determined that the relevant damage to the Brandts' property did not constitute an "occurrence." In reaching this conclusion, it primarily relied on a 2006 Supreme Court of Pennsylvania case, *Kvaerner*

---

[1] The United States District Court for the Middle District of Pennsylvania had jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We review orders granting or denying a motion for judgment on the pleadings de novo. *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019). A judgment on the pleadings may not be "granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In considering these motions, "we must accept as true all facts presented in the complaint and answer and draw all reasonable inferences in favor of the non-moving party." *Bedoya*, 914 F.3d at 816 n.2.

[2] App. 98 (2012 Policy); App. 182, 195–96 (2013 Policy).

[3] App. 14.

*Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*,[4] and our 2010 decision in

*Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co*.[5] We address both cases in turn.

In *Kvaerner*, Bethlehem Steel Corporation contracted with Kvaerner Metals

Division of U.S., Inc. and other companies (collectively, "Kvaerner") for the construction

of a coke oven battery.[6] Bethlehem sued Kvaerner after the coke oven battery failed to

meet construction specifications and was damaged due to rain.[7] Kvaerner sought defense

and indemnification from its insurer, National Union Fire Insurance Company. However,

National Union denied coverage, claiming that the damage to the coke oven battery was

not an accident, and therefore, not an "occurrence" under the relevant policies.[8] The

Supreme Court of Pennsylvania agreed, stating:

> We hold that the definition of "accident" required to establish an "occurrence" under the [commercial general liability] policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond.[9]

We relied upon *Kvaerner* when we decided *Specialty Surfaces*. There, we

concluded that damages awarded in litigation in a Pennsylvania state court did not arise

from an "occurrence" and was therefore not covered by the relevant insurance policies.[10]

---

[4] 908 A.2d 888 (Pa. 2006).
[5] 609 F.3d 223 (3d Cir. 2010).
[6] *Kvaerner*, 908 A.2d at 891.
[7] *Id.*
[8] *Id.* at 892.
[9] *Id.* at 899.
[10] *Specialty Surfaces*, 609 F.3d at 238.

In *Specialty Surfaces*, a school district sued Sprinturf, a manufacturer of synthetic turf, for "defects in materials and workmanship" in the "construction and installation of synthetic turf football fields and all weather tracks" that led to water "damage to the synthetic turf, the impermeable liner, the subdrain system, and the subgrade."[11] We held that water damage to the subgrade was not an "occurrence" because it was not the result of an accident or unexpected event. Rather, it was "an entirely foreseeable, if not predictable, result of the failure to supply a 'suitable' impermeable liner or properly install the drainage system."[12]

Here, the Brandts urge us to distinguish between damage to the agreed-upon contractual work product (i.e., the metal roof panels) and damage to other property.[13] However, under our binding precedent, this is a distinction without a difference.[14] Each time this issue has come before our Court, we have concluded that there was no "occurrence" under the applicable policies insofar as the damages that resulted from

---

[11] *Id.* at 227–28, 238.

[12] *Id.* at 239. Although our Court acknowledged that the damage was not all to the work product itself, we nevertheless held that the damage was not an "occurrence" because it "was a foreseeable result" of the poor workmanship. *Id.*

[13] **Brandts' Opening Br. at 35–36.** In their own case, they claim that coverage should extend to "the costs to restore, repair, and replace their pre-existing property that was damaged by water infiltration and to recover the structure after the metal panels were removed to make the necessary repairs." Brandts' Opening Br. at 10.

[14] In support of their argument, the Brandts mainly rely on two post-*Kvaerner* intermediate state appellate cases: (1) *Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418 (Pa. Super. 2013); and (2) *Pa. Mfr. Indem. Co. v. Pottstown Indus. Complex LP*, 215 A.3d 1010 (Pa. Super. 2019). However, in the absence of any decision from the Pennsylvania Supreme Court indicating that the distinction between damage to the agreed-upon work product and damage to property other than the work product is a material one, we must follow our own precedent.

either poor workmanship or faulty materials was foreseeable.[15] We explained this in *Sapa Extrusions, Inc v. Liberty Mut. Ins. Co*.[16] There, we explicitly explained:

> *Kvaerner*'s logic . . . is not limited to situations in which only the work product itself is damaged. On the contrary, claims for faulty workmanship – in other words, the failure to provide a product as agreed—are too foreseeable to be considered an accident, even if a faulty product damages property other than itself.[17]

Wilton's faulty workmanship installing metal roof panels resulted in extensive damage to related components, such as the roof sheathing and the wood blocking. As the District Court observed, such damages were entirely foreseeable. Accordingly, we agree with its ultimate conclusion that this damage is not covered under the appliable insurance policy.[18] Since we find that no "occurrence" exists under Masterforce's CGL policies, we need not address whether Berkley (1) actually sent the Reservation of Rights letter, (2) is estopped from disclaiming coverage under the policies more generally, and (3) exhibited bad faith in declining to settle the underlying state action.

## II.

---

[15] *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596–97 (3d Cir. 2009); *Specialty Surfaces*, 609 F.3d at 239; *Sapa Extrusions, Inc v. Liberty Mut. Ins. Co*, 939 F.3d 243, 254 (3d Cir. 2019).

[16] 939 F.3d 243 (3d Cir. 2019).

[17] *Id*. at 254 (citations and quotation marks omitted).

[18] Furthermore, though its decision is not binding on our court, we note that in a parallel case between the subcontractor (Keith Wilton) and his own insurer addressing this very issue, a Pennsylvania appellate court likewise determined that there was no "occurrence" under the subcontractor's CGL policy. *See Erie Ins. Exch. v. Wilton*, 273 A.3d 1038 (Pa. Super. Ct. 2022), *reargument denied* (Apr. 12, 2022), *appeal denied*, 285 A.3d 884 (Pa. 2022). The court concluded that the damages were the result of Wilton's "intentional acts" (e.g., purposely failing to inform the Brandts that he was a subcontractor) and, therefore, the fortuity required for an "occurrence" was not established. *Id*.

For the above reasons, we will affirm the District Court's ruling granting Berkley's motion for judgment on the pleadings and denying the Brandts' motion for judgment on the pleadings.